UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.    ) | CASE NO: 6:25-CR-350-PGB-RMN |
| ) | |
| MARK LOFTIS ) | |

**MOTION TO DISMISS COUNTS ONE AND TWO
FOR IMPROPERLY ALLEGING MULTIPLE CONSPIRACIES
OR IN THE ALTERNATIVE FOR A *JAMES* HEARING**

While the Court normally should presume that the government can prove the allegations in its indictment at trial, Loftis moves to dismiss Counts One and Two because the government has improperly alleged multiple conspiracies in each single count as demonstrated by the positions the government has taken in other cases charging the same conspiracies alleged here.

**I.   Introduction**

The government has improperly charged Mark Loftis with two broad conspiracies in an effort to avoid the problems of proof, statute of limitations, and venue that would arise if the government had properly charged its case. Because the indictment charges multiple conspiracies as single conspiracies, Counts 1 and 2 should be dismissed.

This prosecution is part of a nationwide healthcare fraud investigation that the government has dubbed "Operation Brace Yourself" through which it has obtained convictions of marketers, durable medical equipment (DME) providers, doctors, and others in multiple cases around the country by alleging the same purportedly illegal agreements with which it has now charged Mr. Loftis. The government obtained convictions in those other cases by alleging broad overarching conspiracies with certain marketers and telemedicine providers at their core. When prosecuting those cases, the government portrayed the defendant or organization that was the focus of the prosecution as the hub of the conspiracy and individuals like Mr. Loftis as spokes in the

1

surrounding wheel. Rather than charging Mr. Loftis as a spoke in one of the multiple conspiracies upon which it has already obtained convictions, the government has chosen to recast those same purportedly illegal agreements as two conspiracies, both with Mr. Loftis at their center. Having succeeded in obtaining convictions based on its theory that Mr. Loftis was a "spoke", the government should be precluded from now claiming he was the "hub" in those same alleged conspiracies.

If the Court declines to dismiss Counts One and Two, it should hold a *James* hearing prior to trial to determine the contours of the alleged conspiracies so the Court can make informed evidentiary and other rulings during trial. Allowing the government to introduce swaths of testimony and evidence that is determined to be irrelevant and inadmissible only after the fact would be highly prejudicial and is precisely the kind of evidentiary spillover the Supreme Court and Eleventh Circuit have warned against in cases involving multiple conspiracies like this one.

For example, the government appears to have alleged a conspiracy between Mr. Loftis and "Individual 2," a biller who was the lead contact with many of the people whom the government alleges were Mr. Loftis's co-conspirators in 2018 and early 2019. However, that conspiracy ended in the summer of 2019 – when Mr. Loftis ended his relationship with Individual 2 and Individual 2 died soon afterwards – placing it outside the statute of limitations. Allowing the government to present highly prejudicial evidence of Individual 2's conduct only to have the Court determine in the midst of trial that it is barred by the statute of limitations would likely result in a mistrial, something that may be avoided by requiring the government to explain the contours of its charges prior to trial. This is precisely the purpose of a *James* hearing, and the Court should hold one in this case. The government should be required in advance of the hearing to identify the alleged co-conspirators, any co-conspirator statements it intends to introduce, and any acts of co-conspirators

it intends to rely on that fall outside the statute of limitations or upon which it is relying to prove venue.

II.     **Single Conspiracy vs. Multiple Conspiracies**

At trial, the government will have to prove that the acts charged in Counts One and Two were part of a single conspiracy charged in each count. As the 11th Circuit Pattern Jury Instructions explain:

> Proof of several separate conspiracies isn't proof of the single, overall conspiracy charged in the indictment unless one of the several conspiracies proved is the single overall conspiracy.
>
> You must decide whether the single overall conspiracy charged existed between two or more coconspirators. If not, then you must find the Defendants not guilty of that charge.
>
> But if you decide that a single overall conspiracy did exist, then you must decide who the conspirators were. And if you decided that a particular Defendant was a member of some other conspiracy – not the one charged – then you must find that Defendant not guilty.
>
> So to find a Defendant guilty, you must all agree that the Defendant was a member of the conspiracy charged – not a member of some other separate conspiracy.

Pattern Jury Instruction O13.3.

The Supreme Court and Eleventh Circuit have recognized that a defendant can suffer substantial prejudice if "there are so many defendants and separate conspiracies before the jury that there is a substantial likelihood that the jury transferred proof of one conspiracy to a defendant involved in another." *United States v. Calderon*, 127 F.3d 1314, 1328 (11th Cir. 1997); *see also Kotteakos v. United States*, 328 U.S. 750, ("The dangers for transference of guilt from one to another across the line separating conspiracies, subconsciously or otherwise, are so great that no one really can say prejudice to substantial rights has not taken place.").

Two Eleventh Circuit cases are instructive regarding the potential harm posed by an indictment that alleges multiple conspiracies as a single conspiracy.

First, *United States v. Chandler*, 388 F.3d 796 (11th Cir. 2004), involved several defendants who were charged with participating in a single conspiracy to commit mail fraud involving a trivia game conducted by McDonald's restaurant. While the charges focused on the ringleader of the conspiracy, the defendants who went to trial had no connection to each other, and their convictions were overturned because the government failed to prove the single overarching conspiracy charged in the indictment existed. *Id*. at 811-12 (government failed to prove single conspiracy where no evidence "of a common goal, overlapping membership among the various spokes of the conspiracy, or interdependence of the spokes").

Second, *United States v. Richardson*, 532 F.3d 1279 (11th Cir. 2008) involved a single defendant who was charged with a drug trafficking conspiracy. Here, the Eleventh Circuit found no prejudicial variance because the government's case focused on drug trafficking committed by the defendant with government witnesses and because the defendant was alleged to be "the hub of all the conspiratorial acts the government sought to prove at trial." 532 F.3d at 1288. Significantly, the Eleventh Circuit noted that *Richardson* did not involve certain defenses:

> This is simply not a case where the government seeks to hold a defendant who played a peripheral role in a vast conspiracy liable for criminal acts of third parties about which the defendant had no knowledge. Richardson has not claimed, nor could he credibly, that he was innocently unaware of any of the illegal acts testified to at trial by his various associates. Richardson was the only defendant, he was the hub, and all of the government's evidence sought to establish his and nobody else's guilt.

*Id*.

An indictment that erroneously charges multiple conspiracies as a single conspiracy implicates many issues. First and foremost, it permits the jury to convict the defendant of a crime

4

he did not commit. Second, it also permits the government to introduce vast amounts of irrelevant evidence concerning the acts of others. Third, it permits the government to improperly broaden the conspiracy for purposes of both statute of limitations and venue. All of these issues are of concern in this case.

### III. The Indictment

The indictment in this case was returned on December 17, 2025 and alleges two conspiracy counts:

- Count One alleges a conspiracy to commit health care fraud and wire fraud that allegedly occurred "from in or around September 2017, and continuing through in or around October 2020." Indictment ¶ 35.

- Count Two alleges a conspiracy to defraud the United States and to offer, pay, solicit, and receive kickbacks that allegedly occurred "from in or around May 2018, and continuing through in or around October 2020." Indictment ¶ 39.

The indictment does not set forth any factual allegations why Count One begins in September 2017 and why Count Two begins approximately 10 months later in May 2018. The indictment also does not specifically identify any co-conspirators. The indictment refers to two individuals (Individual 1 and Individual 2) and two companies (Company 1 and Company 2) without referring to any as a co-conspirator.

Loftis did enter into a series of tolling agreements with the government beginning on November 11, 2024 that tolled the statute of limitations for any criminal conduct for which the statute of limitations had not already expired as of that date. Accordingly, any conspiracies that Loftis was a member of and that ended before November 11, 2019 could not be charged without violating the statute of limitations.

    **IV.    <u>ARGUMENT</u>**

        **A.    <u>Motion to Dismiss for Improperly Alleging Multiple Conspiracies as Single Conspiracies</u>**

Defendant Loftis recognizes that, for purposes of a motion to dismiss, the Court generally must presume that the government can prove the allegations set forth in its indictment. *See, e.g., United States v. Tocco*, 581 F.Supp. 379, 381 (N.D. Ill. 1984) (denying motion to dismiss because "it is certainly possible that the government's evidence might establish a single conspiracy"). Here, however, the Court can and should consider the government's own filings in other cases around the country. These filings define separate conspiracies and schemes without any mention of Mr. Loftis or his companies, and this Court can and should consider these filings by the government for purposes of Mr. Loftis's motion to dismiss, just as it could consider public records in terms of a civil motion to dismiss.

First, a review of the discovery the government has produced indicates several people whom the government apparently plans to allege were members of the conspiracies in Counts One and Two have already been convicted of conspiracies arising out of the same conduct the government charges here, with each alleged to be the hub of those separate conspiracies.

In two cases brought in the Middle District of Florida (8:22-CR-351 and 8:22-CR-352), Salma Karina Hayat and Zeeshan Hayat were convicted of a conspiracy to defraud the United States and to offer, pay, solicit and receive kickbacks relating to Prizm Media, a marketing company based in Vancouver. The Hayats' plea agreements (attached as Exhibits 1 and 2) place them at the hub of the charged conspiracy and refer to unnamed co-conspirators at Prizm, "DME providers," "laboratories" that did genetic testing, and "other health care providers, and purported marketers acting as intermediaries for these providers." The plea agreements do not specifically mention Mr. Loftis.

In a case brought in the Middle District of Tennessee (3:25-CR-64), Arthur Henderson also was convicted of a conspiracy to defraud the United States and to offer, pay, solicit and receive kickbacks relating to his company Summit Marketing Solutions, Inc., which was based in California. According to his plea agreement (attached as Exhibit 3), Henderson was the hub of the conspiracy, and his co-conspirators include three people who owned DME companies that were headquartered in the Middle District of Tennessee. The plea agreement does not specifically mention Mr. Loftis.

In another case brought in the Middle District of Florida (6:19-CR247), William Novack pled guilty to health care fraud as the hub of a scheme relating to four DME companies that he operated and a marketing company. According to his plea agreement (attached as Exhibit 4), Novack devised and executed a scheme to defraud Medicare by submitting false claims on behalf of four companies that he owned and operated, each of which was located in Orlando. According to the plea, Novack also owned a company called True Alliance Health Group, LLC that "purchased, in bulk," "sham prescriptions" from telemarketing companies and "funneled many of the sham prescriptions" to the DME companies that Novack owned and operated. *See* Exhibit 4 at 32. The plea agreement does not mention Mr. Loftis in this regard. The plea agreement also states that True Alliance "sold the remaining sham prescriptions to other DME companies at a profit," without mentioning Mr. Loftis. *See id*.

Yet another person who apparently is or should be part of the alleged conspiracies here is Joel French, who was indicted in a separate case in the Middle District of Florida (8:24-CR-156) and was recently convicted at trial. According to the indictment (attached as Exhibit 5), French owned and operated a marketing company (R&L Marketing) and managed eight DME companies, two of which were located in the Middle District of Florida. French was charged as the hub of

three conspiracies – one to defraud the United States and to violate the Anti-Kickback Statute, a second to commit health care fraud and wire fraud, and a third to commit money laundering. The indictment refers to a co-conspirator who operated a "broker" company that purchased and resold doctor's orders from "marketers" and to a specific DME company located in the Middle District of Florida, but the indictment does not specifically mention Mr. Loftis.

Other, separate conspiracies are alleged in other cases that may well relate to this case depending on what evidence and arguments the government plans to present at trial.

Overall, if the government is taking the position that Mr. Loftis was the hub of two single conspiracies, that theory contradicts the theories upon which it successfully prosecuted the Hayats, Henderson, French, Novack, and possibly others, all of whom were alleged to be the hub of separate conspiracies the government now appears to claim are actually a single conspiracy with Mr. Loftis at its center. The government cannot manipulate the facts to transform what it previously asserted were separate conspiracies into what it now charges as single conspiracies masterminded by a person they previously represented as such a minor player he was not even mentioned. Accordingly, Mr. Loftis asks the Court to dismiss the multiple conspiracies charged improperly as single conspiracies in Counts One and Two.

      **B.**      **Motion for *James* Hearing**

In the alternative, Mr. Loftis requests a pre-trial hearing under *United States v. James*, 590 F.2d 575 (5th Cir. 1979) (en banc). For the government to introduce co-conspirator statements under Rule of Evidence 801(d)(2)(E), the government must prove by a preponderance that (1) a conspiracy existed, (2) the conspiracy included both the declarant and the defendant against whom the statement is offered, and (3) the statement was made during and in furtherance of the conspiracy. *United States v. Underwood*, 446 F.3d 1340, 1345-46 (11th Cir. 2006).

Here, there is reason to doubt the government's ability to prove that the conspiracies charged in Counts and Two even existed or, if they did, that they were as extensive as the government apparently claims. For example, the agreements that the Hayats and their company Prizm had with Mr. Loftis in 2018 and the agreement that Novack and his company True Alliance had with Mr. Loftis in late 2018 and early 2019 were all arranged with Individual 2, who served as Mr. Loftis's biller and who also made similar agreements with other companies that were unrelated to Loftis. If Mark Loftis was part of any conspiracy in 2017 through early 2019, the hub of such a conspiracy was Individual 2, not Mr. Loftis. However, any conspiracy relating to Individual 2 ended in the summer of 2019 when two things occurred: (1) Mr. Loftis ended all agreements with Individual 2 and (2) Individual 2 died soon afterwards. Whether the government is allowed to present evidence concerning an alleged conspiracy centered on Individual 2 should be determined before trial, rather than waiting until after highly prejudicial evidence has already been introduced only to discover it is inadmissible after the fact.

Moreover, to the extent that the government claims that William Novack is a co-conspirator and that venue is proper in the Middle District of Florida for Counts One and Two because of Novack's operations here, this warrants particular scrutiny before trial. Novack's own plea agreement indicates that True Alliance sold prescriptions to DME companies without indicating that any DME companies knew that they were being sold sham prescriptions. If Novack and True Alliance were deceiving DME companies such as Mr. Loftis about the nature of the "sham prescriptions" and how they were created, this would significantly undermine any basis for concluding that Novack was conspiring with Mr. Loftis and thus any basis for venue because of Novack. Furthermore, Mr. Loftis ended his contact with Novack in early 2019, outside the statute of limitations.

At a minimum, the government should be ordered to present enough evidence at or before the pretrial conference to establish that the conspiracies charged in Counts One and Two existed and are not barred by the statute of limitations, that venue is proper in the Middle District of Florida, that Mark Loftis knowingly participated in the conspiracies, and that the specific statements the government seeks to introduce were made during and in furtherance of the conspiracies.

/s/ Stephen Chahn Lee
Stephen Chahn Lee
Admitted *pro hac vice*
Attorney for Defendant
Law Office of Stephen Chahn Lee, LLC
209 S. LaSalle St, Suite 950
Chicago, IL 60604
312-436-1790
slee@stephenleelaw.com

**Certificate of Conference**

I, Stephen Chahn Lee, counsel for defendant Mark Loftis, certify that I conferred with counsel for the United States by informing them in a call on March 4, 2026 that I would send them a draft of this motion. I then provided a nearly final draft of this motion by email on the morning of March 5, 2026 and said that I would be available for a call if they would like to discuss. Counsel for the United States responded by email that they do not concur with this motion and that I should feel free to file this motion. This motion concerns matters that are not covered in the scheduling order (Docket #16).

/s/ Stephen Chahn Lee
Stephen Chahn Lee
March 5, 2026