IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

                              CASE NO.  6:25-cr-350-PGB-RMN

    v.

MARK LOFTIS

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS ONE AND TWO OF THE INDICTMENT OR, IN THE ALTERNATIVE, FOR A *JAMES* HEARING**

Defendant moves to dismiss Counts One and Two of the indictment, contending that both are duplicitous by alleging multiple conspiracies. Because the facial allegations contained in Counts One and Two properly allege the components of a single conspiracy, and because Defendant's argument rests on extrinsic plea documents from other cases, the Court should reject this challenge.

Defendant moves in the alternative for a pre-trial hearing under *United States v. James*, 590 F.2d 575 (5th Cir. 1979), to "determine the contours of the alleged conspiracies so the Court can make informed evidentiary and other rulings before trial." Doc. 27 at 2. Under Eleventh Circuit law, such a hearing is unwarranted and unnecessary. In the unusual circumstances when *James* hearings are held, they serve the limited purpose of determining whether the Government can admit co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E). Defendant seeks to go well beyond that and have the Court independently evaluate all of the Government's evidence of conspiracy to decide, for example, whether there was a conspiracy that

ended before the statute of limitations. Because Defendant has not shown why specific co-conspirator statements need to be addressed pretrial, the Court should deny the request.

## THE INDICTMENT

As relevant here, the indictment charges that Defendant conspired to commit health care fraud and wire fraud in violation of 18 U.S.C. § 1349 (Count One), and to defraud the United States and pay and receive health care kickbacks in violation of 18 U.S.C. § 371 (Count Two).[1]

Count One charges that Defendant, the owner of Back Pain Home Supplies LLC dba EZ Medical Supply ("BPHS"), conspired with others to commit health care fraud and wire fraud by submitting false and fraudulent claims through BPHS to federal health care programs for orthotic braces and other durable medical equipment ("DME"). The indictment alleges that the conspiracy was carried out through several means, including that Defendant submitted false enrollment information to Medicare, Defendant falsely certified to Medicare that he would not submit false claims, Defendant paid illegal kickbacks and bribes to co-conspirator marketers and others to obtain doctors' orders for braces and to arrange for doctors to have purported telehealth consultations and sign brace orders without having any meaningful contact with patients, and Defendant submitted claims to the federal health care programs for

---

[1] Defendant does not challenge in this motion Counts Three and Four, which charge theft of government property in violation of 18 U.S.C. §§ 641 and 2.

braces and other DME that were medically unnecessary and not reimbursable for other reasons. Doc. 1 ¶ 37(a)-(g).

Count Two charges that Defendant conspired with others to defraud the United States by cheating it out of money and property and impeding the lawful functions of its agencies, and to violate the federal Anti-Kickback Statute. The common goal and the manner and means of this conspiracy are alleged to be the same as the health care fraud and wire fraud conspiracy. Doc. 1 ¶¶ 40, 41.

**ARGUMENT**

### I.   THE TWO CONSPIRACY COUNTS EACH ALLEGE A SINGLE CONSPIRACY AND ARE NOT DUPLICITOUS.

"A duplicitous indictment charges two or more separate and distinct crimes in a single count." *United States v. Burton*, 871 F.2d 1566, 1573 (11th Cir. 1989) (per curiam) (citation omitted). However, "[t]he allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for [t]he conspiracy is the crime, and that is one, however diverse its objects." *Braverman v. United States*, 317 U.S. 49, 54 (1942) (internal quotation marks omitted). To determine whether a single conspiracy exists, the court considers "(1) whether a common goal existed; (2) the nature of the underlying scheme; and (3) the overlap of participants." *United States v. Richardson*, 532 F.3d 1279, 1284 (11th Cir. 2008) (internal quotation marks omitted).

"By now it has become well-established that '[t]he sufficiency of a criminal indictment is determined from its face.'" *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) (quoting *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992)).

3

Because "the jury makes the initial determination of whether the evidence [introduced at trial] supports a single conspiracy," *United States v. Edouard*, 485 F.3d 1324, 1347 (11th Cir. 2007), "on a motion to dismiss for duplicity, the Court is limited to consideration of the face of the indictment and inferences reasonably drawn from those facts in support of the charges pled." *United States v. Evans Concrete, LLC*, No. CR 420-081, 2023 WL 3019058, at *4 (S.D. Ga. April 20, 2023) (internal quotation marks omitted); *see also United States v. Farnsworth*, No. 04-60090-CR, 2005 WL 8168327, at *4 (S.D. Fla. Apr. 18, 2005) ("A motion to dismiss is not a vehicle to challenge the sufficiency of the Government's evidence. In particular, the jury must determine whether the evidence supports a finding of a single or multiple conspiracies." (citing *United States v. Adams*, 1 F.3d 1566, 1584 (11th Cir. 1993)). As thoroughly explained by another court in this district:

> To grant [the defendant's] motion to dismiss Count I as duplicitous, the Court would have to consider his unsupported factual assertions regarding Defendants' relationships to each other, which are not in the Indictment, and give them greater weight than the actual allegations that are set forth in the Indictment. This, the Court cannot do. Indeed, it is "well-established that the sufficiency of a criminal indictment is determined from its face," and as such, in ruling on a motion to dismiss, "a district court is limited to reviewing the face of the indictment. . . ." *Sharpe*, 438 F.3d at 1263 (internal quotations omitted). It would also require the Court to weigh the sufficiency of the allegations presented in the Indictment to determine whether they establish one or multiple conspiracies, effectively asking the Court to engage in the same analysis it would in a civil motion for summary judgment. This, the Court also cannot do. The Eleventh Circuit has unequivocally instructed "[t]here is no summary judgment procedure in criminal cases. Nor do the rules [of criminal

4

procedure] provide for a pre-trial determination of sufficiency of the evidence." *U.S. v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) (quoting *U.S. v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992)). Thus, because the Court has concluded that Count I of the Indictment sufficiently pleads a single conspiracy against all Defendants, [the defendant's] request for dismissal on the basis of what he believes the evidence at trial will show is unavailing. *See Sharpe*, 438 F.3d at 1263 ("a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial.") (quoting *U.S. v. Torking*ton, 812 F.2d 1347, 1354 (11th Cir. 1987)).

*United States v. Balotin*, No. 3:19-cr-191-MMH-JBT, 2021 WL 2351738, at *3 (M.D. Fla. June 9, 2021). Where evidence at trial provides ambiguity as to whether a single conspiracy or multiple conspiracies existed, courts have protected against duplicity concerns during trial by crafting jury instructions regarding unanimity. *United States v. Carter*, No. CR 106-122, 2007 WL 230451, at *4 (S.D. Ga. Jan. 24, 2007) (holding that dismissal of duplicitous count was not an appropriate remedy); *United States v. Mock*, No. 2:12-CR-104-MHT, 2012 WL 7987753, at *2 (M.D. Ala. Nov. 29, 2012), *report and recommendation adopted*, No. 2:12CR104-MHT, 2013 WL 1747800 (M.D. Ala. Apr. 23, 2013) (concluding that the proper remedy for duplicity was not to strike the count but "[a] proper jury instruction and special verdict form that will require the jurors to unanimously select either wire fraud upon a financial institution or wire fraud upon a nonfinancial institution will resolve the issue."); *United States v. Campbell*, No. 1:04-CR-0424-RWS, 2005 WL 6436621, at *7 (N.D. Ga. Oct. 24, 2005) ("[T]o the extent the indictment presented any duplicity, the ambiguity could be cured through jury instructions and/or special interrogatories."). "[J]ury unanimity may be

5

addressed by curative instructions to the jury that its verdict must be unanimous on whatever specification the jurors find to be the predicate of a guilty verdict." *Carter*, 2007 WL 230451, at *4.

Here, Defendant acknowledges that the Court must presume the Government can prove the allegations set forth in the indictment. Doc. 27 at 6. Without citation to any authority, though, Defendant asserts that the Court should consider an indictment from another case and plea agreements entered into by individuals Defendant assumes are the alleged co-conspirators in his indictment to determine whether the Government will be able to prove a single conspiracy (with multiple objects) as alleged in Counts One and Two. Defendant contends that through the separate indictment and those plea agreements, the Government has taken the position that the co-conspirators were at the hub of the conspiracies with which they were charged, such that they cannot be part of the conspiracy charged in the instant indictment with Defendant as the hub. Doc. 27 at 6-8.

As a preliminary matter, the Court should not consider the plea agreements and indictment  that Defendant relies upon. A district court is not permitted to consider facts outside of the indictment when deciding a motion to dismiss. *See, e.g.*, *Sharpe*, 438 F.3d at 1263 (reversing dismissal of indictment after trial for failure to state a claim because the district court improperly considered the evidence presented at trial when it should have confined itself to the face of the indictment); *United States v. Salman*, 378 F.3d 1266, 1267 (11th Cir. 2004) (reversing pretrial dismissal of indictment charging possession of firearms and ammunition by an alien illegally or unlawfully in the United

States, where the district court relied on multiple facts about the defendant's legal status that were outside the face of the indictment); *United States v. Plummer*, 221 F.3d 1298, 1302 (11th Cir. 2000) (holding that district court's dismissal of indictment based in part on reliance on facts outside the face of the indictment was error); *United States v. Rizza*, No. 2:14-CR-2-FTM-38DNF, 2014 WL 3632481, at *2 (M.D. Fla. July 23, 2014) (concluding that to the extent defendant charged with perjury before a grand jury relied on testimony other than that charged in the indictment, court could not look to that testimony in deciding his motion to dismiss); *United States v. Brooks*, No. 1:07–CR–140 JEC, 2007 WL 9676865, at *2 (N.D. Ga. June 15, 2007) (concluding that the court could not consider "evidence outside the record" in evaluating defendant's motion to dismiss indictment); *United States v. Detling*, No. C-180401, 2019 WL 3006623, at *6 (N.D. Ga. April 30, 2019) (explaining that in evaluating a motion to dismiss wire fraud counts, court could not consider defendant's assertion that victims received the benefit of the bargain, as "[s]uch questions of fact must be resolved at trial"). As the Court's analysis is restricted to the face of the indictment, court filings from other cases and assumptions drawn from them are not considered as part of a motion to dismiss.

Even putting aside Defendant's unsupported claim that the Court can look to these public records in evaluating a motion to dismiss in a criminal case, Defendant's argument is logically flawed. The fundamental premise of Defendant's motion—that because the Government has obtained convictions by purportedly portraying those individuals as hubs in their own conspiracies and Defendant as a "spoke[] in the

surrounding wheel" (Doc. 27 at 1-2), the Government is precluded from now charging Defendant for conspiring with those individuals—is not accurate.

Defendant acknowledges that none of the plea agreements even mention him. *See* Doc. 27 at 6 ("these filings define separate conspiracies and schemes without any mention of Mr. Loftis or his companies"); *id*. at 6-7 (describing the Z. Hayat, S. Hayat, Henderson, and Novack plea agreements and stating that none of them mention Defendant). Accordingly, Defendant's argument that those individuals were charged with or pleaded guilty to conspiracies where they were the "hub" and he was just one of many "spokes" is itself an assumption.

But even if Defendant's reading of filings in separate court cases is correct, there is nothing inconsistent about the Government charging Defendant separately from his co-conspirators or charging a co-conspirator with different conduct than what Defendant is charged with. As Defendant's descriptions of the plea agreements indicate, the defendants charged in those separate cases functioned as marketers, that is, intermediaries that facilitated the submission of fraudulent claims by multiple providers such as DME companies and laboratories. *See* Doc. 27 at 6 (describing the Hayat plea agreements). Those individuals were not, as Defendant suggests, inevitably the "hubs" of "independent" conspiracies such that the Government is legally precluded from alleging and proving a single conspiracy involving them and the Defendant. They could be "spokes" of a conspiracy focused on the DME companies or laboratories they worked with. In other words, an individual can be a hub in one conspiracy and a spoke in another.

Counts One and Two of the indictment each allege, and the Government expects to prove, a single conspiracy with Defendant at the center and Individual Two, marketers, principals at purported telemedicine companies, and others working with Defendant and each other to enrich themselves by submitting or causing to submit false and fraudulent claims to Medicare, TRICARE, and CHAMVA for DME, committing wire fraud, defrauding the United States, and paying and receiving illegal kickbacks. Both counts allege each of the components of a single conspiracy: (1) a common goal; (2) the nature of the underlying scheme; and (3) the overlap of participants. First, both counts of the indictment allege a common goal. Doc. 1 ¶¶ 36, 40. Second, Counts One and Two also detail the nature of the underlying schemes as set forth in the respective "Manner and Means of the Conspiracy" provisions of each count including specific and detailed allegations about the conduct of Defendant and his co-conspirators. Doc. 1 ¶¶ 37, 41-42. Third, the indictment explicitly sets out allegations that Defendant was the "key man" directing and coordinating the activities and efforts of various combinations of people. Counts One and Two allege that Defendant submitted forms concealing the management of BPHS (Doc. 1 ¶ 37a); that marketers recruited beneficiaries using telemarketing (*Id.* ¶ 37c); that Defendant paid illegal kickbacks to co-conspirators in exchange for doctors' orders for braces and to arrange for purported telehealth consultations that generated brace orders (*Id.* ¶¶ 37d, e); and that Defendant and others submitted or caused to be submitted false and fraudulent claims to the health care programs (*Id.* ¶ 37g).

"It is irrelevant that particular conspirators may not have known other

9

conspirators, because when a key man directs and coordinates the activities and individual efforts of various combinations of people, the hub may be properly convicted of a single conspiracy." *United States v. Barsoum*, 763 F.3d 1321, 1330 (11th Cir. 2014) (internal quotation marks omitted). It is also irrelevant that other conspirators may not "have participated in every stage of the conspiracy; all that the government must prove . . . is an agreement or *common purpose* to violate the law and intentional joining in this goal by co [-]conspirators." *Edouard*, 485 F.3d at 1347 (internal quotation marks omitted). As long as members of a conspiracy share the same common goal, a co-conspirator joining a conspiracy does not mean a new conspiracy has begun, just as a co-conspirator exiting a conspiracy does not mean the conspiracy has ended. *United States v. Richardson*, 532 F.3d at 1286. Similarly, "[s]eparate transactions [] are not necessarily separate conspiracies, so long as the conspirators act in *concert* to further a common goal. [I]f a defendant's actions facilitated the endeavors of other co[-]conspirators or facilitated the venture as a whole, then a single conspiracy is shown." *Id.* (internal quotation marks omitted); *see also Evans Concrete LLC*, 2023 WL 3019058 at *4 (concluding that there was that sufficient proof of a single conspiracy and noting that a "single conspiracy is not transposed into a multiple one simply by lapse of time, change in membership, or a shifting emphasis on its locale of operations." (quoting *United States v. Heinemann*, 801 F.2d 86, 92 (2nd Cir. 1986))).

Defendant's argument relies on the unstated and incorrect premise that an individual cannot simultaneously be part multiple conspiracies. Take the example of a drug dealer in Orlando who is at the center of a distribution ring in Florida where he

10

arranges the purchasing of kilograms from a Mexican cartel and directs family members to repackage and distribute the drugs to multiple street level sellers throughout Florida. The Government could charge the Orlando dealer with being the hub of a local distribution conspiracy that involved his family members and the street dealers. In such a conspiracy case against the Orlando supplier, the Government could bring as witnesses his co-conspirator family members and all of the co-conspirator street level sellers who he and his family members supplied.

However, the Government could also bring a conspiracy charge against the Mexican cartel source and all of the mid-level dealers in Florida, including the Orlando dealer, who the Mexican cartel source supplied. In that conspiracy case, the defendant would not be the center of the conspiracy. The logical point is this: one person can be at the center or the periphery of a conspiracy depending on how a conspiracy is charged and who is alleged to be part of the conspiracy. The Government just cannot charge an individual in separate conspiracy cases based on the same conduct without potentially subjecting him to double jeopardy. *See, e.g.*, *United States v. Ruggiero*, 754 F.2d 927, 931 (11th Cir. 1985). And, here, Defendant was not charged in any of the other cases against the marketers or other co-conspirators so no double jeopardy concern exists.

As set forth above, in evaluating a motion to dismiss, the Court should not address whether the trial evidence will support the allegation of a single conspiracy. On their face, Counts One and Two of the indictment allege the components of a single conspiracy, and any plausible argument that the evidence actually establishes multiple

conspiracies is left for the jury to decide after being properly instructed.

## II. THE COURT SHOULD DENY THE MOTION FOR A *JAMES* HEARING AS NEITHER REQUIRED NOR NECESSARY.

Defendant alternatively seeks a *James* hearing "to determine the contours of the alleged conspiracies" so that the Court can make evidentiary and other rulings before trial. Doc. 27 at 2. Defendant has not identified any statements or documents where he has concerns about the admissibility of co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E). Defendant instead suggests that the hearing should focus on topics such as whether the Government can prove that the charged conspiracies existed at all, whether there was a separate conspiracy involving Individual 2 that ended outside the statute of limitations, whether a marketer, Mr. Novack, conspired with Defendant or instead deceived him, and whether there is a basis for venue in the Middle District of Florida if Mr. Novack did not conspire with Defendant. Doc. 27 at 9.

Under Federal Rule of Evidence 801(d)(2)(E), out-of-court statements are not hearsay if they are made by a co-conspirator of a party during the course and in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E). To be admissible pursuant to Federal Rule of Evidence 801(d)(2)(E), the Government must establish, by a preponderance of the evidence: (1) that a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the statement was made during the course and in furtherance of the conspiracy. *United States v. Man*, 891 F.3d 1253, 1271 (11th Cir. 2018).

The Eleventh Circuit applies a liberal standard in determining whether a statement is made in furtherance of a conspiracy. *See, e.g., United States v. Bazemore*, 41 F.3d 1431, 1434 (11th Cir. 1994). The district court may conditionally admit co-conspirator statements subject to the Government connecting them to a conspiracy later in the trial. *United States v. Hasner*, 340 F.3d 1261, 1275 (11th Cir. 2003).

A *James* hearing "determines whether the statements of alleged coconspirators are admissible against a defendant pursuant to Federal Rule of Evidence 801(d)(2)(E)." *United States v. Siegelman*, No. 2:05-cr-119-MEF, 2006 WL 8441440, at *1 (M.D. Ala. Mar. 15, 2005). However, a pre-trial determination of the admissibility of co-conspirator statements is not required in the Eleventh Circuit. *See, e.g.*, *United States v. Cross*, 928 F.2d 1030, 1052, n.71 (11th Cir. 1991) (rejecting an argument that the district court should have conducted a hearing prior to the introduction of co-conspirator statements at trial); *United States v. Sanchez*, 722 F.2d 1501, 1508 (11th Cir. 1984) ("A separate *James* hearing prior to the presentation of the government's case in chief . . . is not required."); *United States v. Perez*, 823 F.2d 854, 855 (5th Cir. 1987) ("[*Bourjaily v. United States*, 483 U.S. 171, 181 (1987)] holds that the offered statement itself can properly be considered along with the other evidence in determining whether the hearsay declarant was the defendant's coconspirator. This effectively abolishes our *James* constraints; . . . .").[2]

---

[2] Following the Supreme Court's decision in *Bourjaily*, addressing the procedure and evaluation of admission of co-conspirator statements, the "concern that the jury not be exposed to the content of the co-conspirator's statement lest it ultimately be excluded because

Here, Defendant does not attempt to lay the predicate for holding a *James* hearing. Out of the voluminous discovery produced by the Government—which includes interview reports summarizing interviews of multiple witnesses, emails, and other electronic communications—he identifies not a single co-conspirator statement that might arguably be inadmissible and that might therefore merit a hearing. Instead, he wants the Court to conduct a free-form inquiry into the Government's evidence to determine whether it can prove any conspiracy, or that it can prove a conspiracy within the statute of limitations.

Defendant appears to want to use a hearing as a vehicle for the Court to make factual findings about the nature of the conspiracy. He contends, for example, that a *James* hearing should inquire into the relationship between Defendant and Individual 2 that, he claims, must be a distinct conspiracy because Individual 2 died in the summer of 2019 and Defendant and Individual 2 no longer worked together. Doc. 27 at 2. This far beyond any purpose that the Eleventh Circuit has endorsed for a *James* hearing. Defendant is essentially asking the Court to hold a hearing so that he can elicit or offer substantive evidence about the activities of Individual 2 and other co-conspirators, drawn from his reading of co-conspirator plea agreements, and have the Court rule on the contours of the conspiracy the Government may prove at trial. This is no less than a request for a summary judgment ruling, which is precluded in criminal

---

of the absence of an adequate evidentiary foundation should all but completely disappear." 30B Michael H. Graham, Federal Practice & Procedure, § 7025, at p. 268 (1997).

cases. *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004).

The same is true of Defendant's contention that the Court should address Mr. Novack's status as a co-conspirator and its implications for venue before trial. Doc. 27 at 9. Defendant suggests that Mr. Novack's plea agreement can be read to mean that Mr. Novack "deceived" Defendant rather than conspiring with him, such that the Court could conclude that Mr. Novack was not a co-conspirator and therefore venue is lacking. The purpose of a trial is to determine if Defendant was deceived, as Defendant argues, or was part of the conspiracy charge in each of Counts One and Two. This is far afield from the purpose of a *James* hearing. Trial cannot be short-circuited by the kind of pretrial rulings Defendant seeks.

Defendant has not identified any need for the Court to inquire into the admissibility of a co-conspirator statement by Mr. Novack (or anyone else) through a pre-trial hearing. Defendant offers no reason to conduct a mini trial when the Government has already produced voluminous discovery, including summaries of interviews of witnesses and email communications, and the Government will provide, per the Court's scheduling order, the defense with a witness and exhibit list before trial to assist Defendant in identifying any co-conspirator statements and prepare for trial. The Court can make any ruling regarding the application of Federal Rule of Evidence 801(d)(2)(E) during trial with the benefit of having heard the Government's evidence, the specific statement at issue, and the relevant context for that statement. A pre-trial hearing to consider the foundation for every co-conspirator statement would become a mini trial, unnecessarily prolong pre-trial litigation, and waste valuable judicial

resources. *See, e.g.*, *United States v. Marquardt*, 695 F.2d 1300, 1304 (11th Cir. 1983) (noting that "the trial court was well within its discretion in refusing to hold a *James* hearing, which would have been duplicative of the trial itself and would have wasted the judicial resources *James* was designed to conserve" (internal quotation marks omitted)); *United States v. Hawkins,* 661 F.2d 436, 450 (5th Cir. 1981) ("Given the sheer volume of the evidence as well as the large number of Government witnesses, the trial court reasonably concluded the holding of a separate *James* hearing was impracticable"); *United States v. Tyson*, No. CR 315-013, 2016 WL 1180202, at *1 (S.D. Ga. March 25, 2016) (denying the motion for a pretrial *James* hearing and explaining that "[a]s the need for a *James* hearing is lessened in light of *Bourjaily*, and in the interest of judicial economy" the determination of the admissibility of co-conspirator statements would be made at trial); *United States v. McGregor*, No. 2:10CR186-MHT, 2011 WL 978794, at *2 (M.D. Ala. Mar. 18, 2011) (denying motion for *James* hearing in complex case with voluminous discovery where the Government asserted that "holding a pretrial *James* hearing is no longer the norm in the Eleventh Circuit and that it would be more efficient to admit the statements, subject to their being connected up by the close of the government's evidence."). There will be ample opportunity for the Court to resolve any objections to admissibility of evidence—should there be any—and to safeguard Defendant's right to a fair trial during the ordinary course of trial. Therefore, Defendant's motion for a *James* hearing should be denied.

## **CONCLUSION**

Defendant's motion to dismiss Counts One and Two of the indictment or, in the alternative, for a pre-trial *James* hearing, should be denied.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

LORINDA LARYEA
Chief, Fraud Section
Criminal Division
U.S. Department of Justice

By:    */s/ Raymond E. Beckering III*
Raymond E. Beckering III
Trial Attorney
Florida Special Bar No. A5503174
Catherine Wagner
Acting Assistant Chief
Florida Special Bar No. A5502410
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Ave NW
Washington, DC 20005
Phone: (202) 256-0867
raymond.beckering.iii@usdoj.gov
Phone: (202) 794-0097
catherine.wagner@usdoj.gov

17

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel for Defendant.

By:    */s/ Raymond E. Beckering III*
Raymond E. Beckering III
Trial Attorney

18