**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CASE NO: 6:25-CR-350-PGB-RMN** |
| | ) | |
| **MARK LOFTIS** | ) | |

## DEFENDANT'S TRIAL BRIEF

Mark Loftis intends to defend himself at trial by waiving his Fifth Amendment right, testifying in his own defense, and subjecting himself to cross-examination by the government.  He intends to assert the defenses that: (1) the government has not proven "willfulness" or an agreement to commit the alleged crimes, (2) he was misled by people with whom he did business and thus had insufficient knowledge to know that those people were engaged in criminal conduct, (3) he acted in good faith, and (4) he acted in good-faith reliance on multiple professionals, including billers and attorneys.  He should be allowed to testify about the topics addressed below, and he should be allowed to introduce business emails and documents that are not hearsay or qualify as exceptions to the hearsay rule and that are critical to his defense.

## I.      The Charges

### A.      The government charged two conspiracies involving numerous individuals and companies.

The indictment here alleges in Counts 1 and 2 that Mark Loftis entered into a conspiracy to commit health care fraud and wire fraud (from September 2017

1

through October 2020) and a conspiracy to violate the Anti-Kickback Statute (from May 2018 through October 2020). The indictment does not identify any specific individuals as co-conspirators, and the government has not specifically identified any, but the government apparently believes that there are many co-conspirators, including the following:

- The person referenced in the indictment as "Individual 2," who ran a billing company referenced in the indictment as "Company 2";

- Zeeshan Hayat and Karina Hayat, who ran the company Prizm Media; and

- William Novack, who ran the company True Alliance Health Group.

Counts 3 and 4 relate to purchases of continuous glucose monitors that Mr. Loftis made in the summer of 2020. The government alleges that these purchases were thefts of government funds that were deposited into Back Pain Home Supplies' bank account via the Provider Relief Fund.

### B.     All of the charges require the government to prove a willful state of mind.

To prove all of the charges, the government must prove beyond a reasonable doubt that Mr. Loftis acted "willfully," meaning with a bad purpose and knowledge that his conduct was unlawful. *See* Doc. 1; *United States v. Vereen*, 920 F.3d 1300, 1310 (11th Cir. 2019) ("Willfulness . . . typically requires that the defendant acted with knowledge that his conduct was unlawful, . . . and that the

defendant acted with a bad purpose and a culpable state of mind.") (internal citations and quotation marks omitted).

## II.   <u>Relevant Eleventh Circuit Authority Concerning Hearsay.</u>

The following section provides relevant Eleventh Circuit authority concerning the hearsay rules most likely to be applicable in this case.

### A.   <u>Eleventh Circuit authority concerning relevant exceptions to the hearsay rule.</u>

#### 1.   <u>Statements not offered for their truth.</u>

A statement that is not offered for the truth of the matter it asserts is not hearsay and is admissible without regard to whether it complies with one of the exceptions to the hearsay rule. *United States v. Mateos*, 623 F.3d 1350, 1364 (11th Cir. 2010).

#### 2.   <u>Verbal acts including acts that have an effect on the listener</u>

The Eleventh Circuit has recognized that an out-of-court "declaration" is not hearsay if it constitutes "verbal or nonverbal conduct when it is offered as a basis for inferring something other than the matter asserted," such as "the effect it has on a hearer." *United States v. Cruz*, 805 F.2d 1464, 1478 (11th Cir. 1986). "Such verbal acts are not in the first instance assertive statements and not offered to prove the truth of the matter asserted." *Id. See United States v. Mena*, 863 F.2d 1522, 1631 (11th Cir. 1996) (utterances that have legal significance such as granting consent or making a contract are verbal acts and are not hearsay).

Thus, the Eleventh Circuit has held that out-of-court statements that are admitted to prove the effect on a defendant's knowledge are not hearsay. For example, in *United States v. Bell*, 112 F.4th 1318 (11th Cir. 2024), the Eleventh Circuit held that news reports, emails and articles regarding the legality of a defendant's conduct were not hearsay because the statements went to the defendant's knowledge of this topic and were not introduced to show the fact the matter asserted, i.e., that the conduct was, in fact, legal.

Significantly, in *United States v. Mateos*, 623 F.3d 1350, 1364 (11th Cir. 2010), the Eleventh Circuit held that a recorded statement by the administrator of a clinic (who was alleged to be a co-conspirator) to the defendant that "there's no fraud whatsoever here" at the clinic "was not hearsay at all because it was not being offered for the truth of the matter asserted." The Eleventh Circuit said that the evidence was "potentially powerful exculpatory evidence because a conspirator's denial of the existence of Medicare fraud to [the defendant] is certainly in tension with the theory that [the defendant] is privy to the scheme." *Id.* at 1355. The Eleventh Circuit also concluded that the district court erred in excluding the statement because it "was not hearsay, contrary to the district court's ruling." *Id.* The Eleventh Circuit found that the government and the district court erroneously focused on whether the recorded statement fit into a hearsay exception and "skipp[ed] over the prior and all-important question of whether the statement was

4

hearsay at all," and concluded it was not because the statement was not admitted for the truth, *i.e.,* to show there was no fraud, but to show its effect on the listener, *i.e.,* the defendant did not believe there was fraud. *Id.* at 1364.

Thus, "[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." *Id. See also United States v. Quinn*, 123 F.3d 1415, 1420 (11th Cir. 1997) (holding district court erred in excluding sheriff's deputy's conversation with defendant concerning the defendant becoming an FBI informant because the statements were not offered for the truth that the defendant was working as an informant but as evidence that he believed he was in support of a public authority defense); *United States v. Grassi*, 783 F.2d 1572, 1577-78 (11th Cir. 1986) (extortion victim's out-of-court statements "concerning his fear of appellants and his belief that they were 'loan sharks' and connected with the mob or Mafia" were not hearsay because they were admitted "not for the truth of the information in the statements but for the fact that the victim heard them and that they would have tended to produce fear in his mind."); *United States v. Holley*, 166 F.4th 139, 148-49 (11th Cir. 2026) (bystanders' recorded statements were not hearsay because they "were offered to explain the conduct and behavior" of police officers and were "not admitted for the truth of the matters asserted"). *See also United States v. Williams*, No. 3:22-CR-154-LAB-MCR, 2023 WL 5672255, *2 (M.D.

5

Fla. Sept. 1, 2023) (Burns, J.) (applying *Cruz* to find defendant charged with tax fraud may testify about advice received from accountant and explain how and why he relied on the advice to show the effect that advice had on him as the listener in support of a defense that he did not willfully violate the tax laws).

### 3.    Prior consistent statements

When a defendant testifies and is subject to cross-examination, his prior out-of-court statements are not hearsay if the statement is "consistent with the declarant's testimony" and is offered:

> (i)    "To rebut an express or implied charge that the defendant recently fabricated it or acted from a recent improper influence or motive in so testifying
>
> (ii)    "To rehabilitate the declarant's credibility as a witness when attacked or another ground"

Fed. R. Evid. 801(d)(1)(B). *See United States v. Reed*, 887 F.2d 1398, 1406 (11th Cir. 1989) (accusations of recent fabrication began in opening argument and continued through cross-examination of witness, justifying introduction of statement under FRE 801(d)(1)(B)); *see also United States v. Graham*, 123 F.4th 1197, 1252 (11th Cir. 2024) (use of prior consistent statement to rehabilitate witness not limited "to the precise issues" on which he was impeached)

FRE 801(d)(1)(B)(ii) also permits the admission of prior consistent statements where the witness's credibility is attacked on "another ground." Following a 2014 amendment, such statements are admitted as substantive

evidence and not merely to rehabilitate the witness. Under this subsection, prior consistent statements can be admitted to rebut charges of faulty memory, to explain or modify a prior inconsistent statement, or otherwise to refute challenges to the witness's testimony, other than an accusation of recent fabrication. *See United States v. Proctor*, 861 F. App'x 760, 767 n. 5 (11th Cir. 2021); *United States v. Evans*, 754 F. App'x 898, 902-03 (11th Cir. 2018).

Because the evidence is "not hearsay," it is admissible for the truth as well as to impeach. *Proctor*, 861 F. App'x at 766 n. 4; *Evans*, 754 F. App'x at 903.

### 4.     Emails as business records

The Eleventh Circuit has recognized that emails can be admitted as business records under the hearsay exception provided in Rule 803(6) if a witness lays the proper foundation. *See United States v. Brown*, 125 F.4th 1043 (11th Cir. 2025) (emails from an alleged co-conspirator's phone were admissible as business records). *See also Hotels of Deerfield, LLC v. Studio 78, LLC*, No. 21-60980-CIV, 2022 WL 16540230 (S.D. Fla. October 28, 2022) (emails were admissible under Rule 803(6) because they were sent during the relevant period, were kept in the ordinary course of regularly conducted business activities, email was a regular practice of the parties' business activities, and there is no indication of a lack of trustworthiness from the emails).

7

### 5.   State of mind

FRE 803(3) excepts from the hearsay rule statements describing a declarant's "then-existing mental, emotional, or physical condition," but expressly excludes from the exception "a statement of memory or belief to prove the fact remembered or believed."  Thus, a defendant may introduce his prior statement, "I believe this marketing plan is legal" to show his state of mind, i.e., that he believed he was not violating the law, but not for the fact believed, i.e. that the marketing plan did not, in fact, violate the law.  *See United States v. Veltman*, 6 F.3d 1483, 1495 (11th Cir. 1993) (district court erred by refusing to admit statements showing victim's suicidal state of mind under FRE 803(3) where victim's state of mind was relevant to defendant's defense); *United States v. Tokars*, 95 F.3d 1520, 1535 (11th Cir. 1996) (statements that victim intended to divorce husband and take his money properly admitted under FRE 803(3) where relevant to element of offense); *United States v. West*, 898 F.2d 1493, 1497-98 (11th Cir. 1990) (error for district court to preclude defendant from testifying to out-of-court statements that were admissible for their "effect on [his] state of mind").

Similarly, statements admitted to show the reasons for a decision may also be admissible under the state of mind exception.  *See Okwan v. Emory Healthcare, Inc.*, 2021 WL 4099236, *4 n.9 (11th Cir. 2021) (declarations from faculty members

8

explaining reason for denial of extended residency contract was poor performance rather than racial animus admissible under state of mind exception).

> **B.** **Exculpatory statements are not precluded by the hearsay rule so long as the statements are either not hearsay or qualify for an exception to the rule.**

The Eleventh Circuit has held that a defendant **who does not testify** cannot introduce exculpatory statements that were made in a self-serving way. *See, e.g., United States v. Willis*, 759 F.2d 1486 (11th Cir. 1985). This most commonly occurs when a defendant seeks to admit his own prior out-of-court statement that he did not commit a crime as proof of his innocence without taking the stand and subjecting himself to cross-examination. In *Willis*, the defendant was interviewed at the time of arrest and made statements that were allegedly exculpatory. The defendant then sought at trial to ask the interviewing agent about his statements. The Eleventh Circuit held, "[o]bviously, the defense sought to place [the defendant's] remarks before the jury without subjecting [the defendant] to cross-examination. This is precisely what is forbidden by the hearsay rule." *Id.* at 1501. The Eleventh Circuit's concern was not that the statements were "exculpatory," but that they were made outside of court and were being offered for the truth – that he did not commit the crime. As the Eleventh Circuit held, this is a classic example of hearsay that is inadmissible unless it qualifies for one of the exceptions listed in the Rules.

Similarly, the Eleventh Circuit has held that a defendant who does not testify cannot seek to introduce another person's exculpatory, out-of-court statement under the exception for statements against interest under Rule 804(b)(3). *See Barrass v. Secretary, Florida Department of Corrections*, 766 Fed. Appx. 760, 766 (11th Cir. 2019) (Florida state court properly barred a defendant from introducing another person's arguably exculpatory statement because the statement "lacked the characteristic that is fundamental to a declaration against interest").

However, no rule bars the admission of exculpatory, out-of-court statements simply because they are exculpatory, so long as the statement is either not hearsay (because it is not being offered for the truth) or qualifies for an exception to the rule (e.g., because it is a business record or is intended to rebut a recent charge of fabrication). *See, e.g.., Mateos,* 623 F.3d at 1364 (exclusion of a potentially exculpatory statement by a co-conspirator that there was "no fraud whatsoever" in the business was error because the statement was not hearsay).

C.   **An out-of-court statement may be admitted even if the speaker is not called as a witness.**

As the Eleventh Circuit has recognized, the Federal Rules of Evidence do not require the party offering an out-of-court statement to call as a witness the person who made the statement, so long as the sponsoring witness provides sufficient foundation for the admissibility of the evidence. In *United States v. Cancelliere*, 69 F.3d 1116, 1118 (11th Cir. 1995), the government introduced letters

10

written to the defendant by his deceased father. The government argued that the letters were not offered to prove the truth of the matters asserted therein but, rather, to establish the defendant's state of mind, knowledge, belief or intent as a consequence of reading them under Rule 803(3).  *Id.* at 1122.  The defendant's knowledge and intent were in issue both with regard to the government's charges and the defendant's good faith defense.  *Id.*  On appeal, the Eleventh Circuit held "the letters were not hearsay when admitted to prove [the defendant's] state of mind."  *Id.* at 1122-23, citing *United States v. Harris*, 942 F.2d 1125, 1130-31 (7th Cir. 1991) (holding letters from deceased man to defendant were admissible to prove defendant's lack of willfulness in not reporting gifts as income on tax returns because not admitted for truth of statements in letters but to show what defendant believed, which did not "depend on the actual truth of the matters asserted in the letters. Even if [the declarant] were lying, the letters could have caused [the defendant] to believe in good faith that the things he gave her were intended as gifts.").  The fact that the person who made the statements was deceased and did not testify did not factor into the Eleventh Circuit's analysis.  *See also United States v. Spila*, 136 F.4th 1296 (11th Cir. 2025) (no abuse in admitting emails as self-authenticating business records based on certifications from Google representatives, even though Google did not write or create the substance of the emails); *United States v. Johnson*, 904 F.Supp. 1303, 1309-10 (M.D. Ala. October 17,

11

1995) (even if the declarant is unavailable at trial, statements by the declarant admitting to a crime and thus exculpating the defendant would be admissible under applicable rules).  *See also Williams*, No. 3:22-CR-154-LAB-MCR, 2023 WL 5672255, *3 ("if he chooses to testify, Williams may state that [his accountant, who was deceased] gave him tax advice and may describe how and why he relied on the advice. Williams's testimony wouldn't be hearsay because it would be admitted only for evaluating what, if any, effect [the accountant's] advice may have had on the listener, Williams.").

### III.   Mr. Loftis has a Due Process Right to Introduce Evidence Supporting His Defense.

In a criminal case, due process concerns are also relevant to determining the admissibility of evidence, especially where, as here, the primary disputed issue is the defendant's willful state of mind.  In *United States v. Garber*, 607 F.2d 92, 99 (5th Cir. 1979) (en banc), the Fifth Circuit[1] held that "where the element of willfulness is critical to the defense, the defendant is entitled to wide latitude in the introduction of evidence tending to show lack of intent."

In *United States v. Hurn*, 368 F.3d 1359, 1363 (11th Cir. 2004), the Eleventh Circuit held that the exclusion of defense evidence would violate due process in

---

[1] *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (decisions of Fifth Circuit handed down prior to October 1, 1981 binding on Eleventh Circuit)

some circumstances, such as when a defendant is not allowed to "introduce evidence directly pertaining to any of the actual elements of the charged offense" or when a defendant is not allowed to "introduce evidence that, while not directly or indirectly relevant to any of the elements of the charged events, nevertheless tends to place the story presented by the prosecution in a significantly different light, such that a reasonable jury might receive it differently."

The Eleventh Circuit has applied these principles to conclude the district court erred when excluding evidence probative of the defendant's intent. *See, e.g.,* *United States v. Lankford*, 955 F.2d 1545 (11th Cir. 1992) (district court erred in excluding testimony about the reasonableness of a defendant's belief that would be relevant to the issue of whether the defendant willfully violated tax laws), *United States v. Gaskell*, 985 F.2d 1056 (11th Cir. 1993) (district court erred in excluding testimony that was probative of the defendant's state of mind).

### A.   **<u>Good Faith</u>**

The Eleventh Circuit has recognized a general good faith defense. The pattern jury instruction states as follows:

> "Good faith" is a complete defense to a charge that requires intent to defraud. A defendant isn't required to prove good faith. The Government must prove intent to defraud beyond a reasonable doubt.
>
> An honestly held opinion or an honestly formed belief cannot be fraudulent intent – even if the opinion or belief is mistaken.

13

> Similarly, evidence of a mistake in judgment, an error in management, or carelessness can't establish fraudulent intent.
>
> But an honest belief that a business venture would ultimately succeed doesn't constitute good faith if the Defendant intended to deceive others by making representations the Defendant knew to be false or fraudulent.

11th Cir. Special Jury Instruction 18.

The Eleventh Circuit has held that that a refusal to give a good-faith defense instruction was reversible error in a case where willfulness was at issue. *See United States v. Morris*, 20 F.3d 1111 (11th Cir. 1994) (reversing conviction because the defendants' "entire defense is compromised without an adequate instruction on their good-faith theory of defense," especially when "the evidence against the [defendants] is limited and circumstantial, while there is substantial evidence supporting the proffered defense").

## B.     Reliance on Professional Advice

Separately from a general good faith defense, the Eleventh Circuit also recognizes a specific defense concerning the good faith reliance on professional advice. The Eleventh Circuit's special instruction for good-faith reliance upon advice of counsel states as follows:

> Good-faith is a complete defense to the charge in the indictment because the Government must prove beyond a reasonable doubt that the Defendant acted with [intent to defraud] [bad purpose to disobey or disregard the law] [a specific intent to violate a known legal duty]. Evidence that the Defendant in good-faith followed the advice of counsel would be

14

inconsistent with such an unlawful intent. Unlawful intent has not been proved if the Defendant, before acting:

• made a full and complete good-faith report of all material facts to an attorney he or she considered competent;

• received the attorney's advice as to the specific course of conduct that was followed; and

• reasonably relied upon that advice in good-faith.

*See* 11th Cir. Special Jury Instruction 18.

The Eleventh Circuit has upheld the use of a modified version of the pattern instruction when a defendant relied on the advice of a professional other than an attorney, such as an accountant. *See United States v. Horner*, 853 F.3d 1201, 1208-1211 (11th Cir. 2017) (holding that modified version of advice of counsel pattern instruction applied to accountant's advice "accurately stated the law and provided the jury all the understanding necessary to fully consider the Horners' defense").

As discussed below, Mr. Loftis will assert a defense based on the advice he received from professionals including attorneys and medical billers. Consistent with Mr. Loftis's due process rights, evidence relevant to those defenses should not be excluded. *See United States v. Kottwitz*, 614 F.3d 1241, 1471, opinion withdrawn in part on other grounds, 627 F.3d 1383 (11th Cir. 2010) ("The defendant bears an "extremely low" threshold to justify the good faith reliance instruction and does not need to prove good faith. Whether the defendant fully disclosed the relevant facts, failed to disclose all relevant facts, or concealed

15

information from his advisor, and relied in good faith on his advisor are matters for the jury—and not the court—to determine, under proper instruction"). See also *United States v. Morris*, 20 F.3d 1111, 1115 (11th Cir. 1994) (". . . specific intent may be negated by a good-faith misunderstanding of the law or a good-faith belief that one is not violating the law, regardless of whether or not the belief is reasonable."). The government may believe its evidence will overcome the general good-faith defense and the defense of relying on attorneys and other professionals, but this is a question for the jury to decide.

## IV.    <u>Discovery</u>

After receiving a grand jury subpoena in 2021, Mr. Loftis signed a waiver of attorney-client and work product privileges concerning communications with and materials prepared by attorneys other than those he had retained in connection with the government's investigation.  Counsel then produced thousands of emails to the government, including many emails with Individual 2 (the biller), with Prizm, with True Alliance, with Medtech, and with attorneys.  In the course of preparing for trial, current counsel determined that some relevant emails had not been produced by prior counsel and provided them to the government.  Counsel believes that all communications concerning professional advice Mr. Loftis received have been produced to the government (all of the documents attached here as exhibits were provided to the government prior to indictment).  If counsel

learns of additional materials that were inadvertently not produced, counsel will provide them to the government promptly.

## V. Categories of evidence that are relevant to Mr. Loftis's defenses and admissible as not violating the rule against hearsay.

The following broad categories of evidence that implicate out-of-court statements are relevant both to the elements of the offenses with which Mr. Loftis is charged and to his defenses and will be introduced for non-hearsay purposes or pursuant to exceptions to the hearsay rule.  Mr. Lofits intends to testify about each of these matters and to introduce emails and other documents that corroborate his testimony.  This is not an exhaustive list of the evidence Mr. Loftis intends to introduce but is illustrative of that evidence and provided for the Court's consideration prior to trial.

### A. Mr. Loftis's knowledge and understanding of how the individuals and companies he entered into agreements with operated.

The government alleges Mr. Lofits knowingly and intentionally entered into agreements with individuals, such as the biller Individual 2, and companies, such as Prizm Media, True Alliance, and Medtech, to violate Medicare regulations and the Anti-Kickback Statute ("AKS").  The government's case is premised on the allegation that Mr. Loftis knew how these businesses actually operated.

For example, to prove Mr. Loftis entered into a criminal agreement with Prizm Media to cold-call Medicare beneficiaries, the government must prove the

17

basic fact that he knew this is what Prizm Media was doing and offering. However, Mr. Loftis contends he did not know this is how Prizm Media operated. Documents sent by Prizm Media to Mr. Loftis in which Prizm represented its business model as *not* involving cold calls, such as one where it described itself as using "nationally-aired ads or optimized web landing pages," opt-ins from patients, and recorded calls with patients, are, therefore, relevant to showing Mr. Loftis *did not* enter into an agreement to cold call patients, as the government contends, and to his good faith defenses. *See* Exhibit 1 (April 12, 2018 email and attached letter). Such documents are not hearsay because they are not being offered for the truth, *i.e.,* to show how Prizm actually operated, but to show their effect on Mr. Loftis and his state of mind, *i.e.,* that he believed Prizm's business model did not involve cold calls. In addition, because the emails were exchanged and kept in the regular course of business, they are admissible pursuant to the business records exception to the hearsay rule.

Similarly, Novack and a colleague provided false information to Mr. Loftis about how True Alliance operated, such as falsely claiming that they would engage in online advertising on behalf of Mr. Loftis's company and would do follow-up calls with patients. *See* Exhibit 2 (November 19, 2018 email providing a screenshot of how the ads would look). Such statements are not being offered for the truth, *i.e.,* to show how True Alliance actually operated, but to show their effect

18

on Mr. Loftis and his state of mind, *i.e.,* that he believed True Alliance's business model did not involve cold calls. In addition, because the emails were exchanged and kept in the regular course of business, they are admissible pursuant to the business records exception to the hearsay rule.

Many of the government's allegations involve a "DME Telemed Project" that was designed by Individual 2 and that was in effect from September 2017 through mid-2019. Mr. Loftis intends to introduce evidence, including his own testimony, about how Individual 2, a billing expert whom he trusted, described the project's operation, including how Individual 2 interacted with marketers and doctors and how Individual 2 responded to audits and patient complaints. Individual 2's statements and emails to Mr. Loftis are admissible to show their effect on Mr. Loftis and his state of mind, including why he relied on and chose to do business with Individual 2, and how he believed the business arrangement he agreed to enter into with Individual 2 operated. In addition, because emails from Individual 2 to Mr. Loftis were exchanged and kept in the regular course of business, they are admissible pursuant to the business records exception to the hearsay rule.

### B. Mr. Loftis's knowledge and understanding of Medicare regulations and the AKS.

To prove the charges alleged in the Indictment, the government must also show Mr. Loftis acted willfully, that is that he acted with a bad purpose and

knowledge that his conduct violated the law, which in this case is comprised of Medicare regulations and the AKS. Therefore, the government must show not only that certain payment arrangements, such as paying marketers for leads, violated the law, but that Mr. Loftis *knew* that they did. As a result, statements by Individual 2 and others to Mr. Loftis about the AKS are relevant to Mr. Lofits's knowledge of the law, something the government must prove and that supports his good faith defenses. Mr. Loftis will testify that Individual 2 described the AKS as applying only to payments to doctors and that Individual 2's "DME Telemed" program did not violate the AKS. Individual 2 also made such statements in emails that Individual 2 sent to Mr. Loftis. *See, e.g.,* Exhibit 3 (March 24, 2019 email by Individual 2 in which he states that his program "meets every facet" of the AKS and the Stark Act, along with one attachment). Because these statements and this email are not being offered for its truth, *i.e.,* that the AKS does not prohibit certain payments to marketers, but to show its effect on Mr. Loftis and his state of mind, it is not hearsay. As a record kept in the regular course of Mr. Loftis's business, the email is also admissible under that exception to the hearsay rule.

## C. **Mr. Loftis's knowledge and understanding of whether the agreements into which he entered complied with Medicare regulations and the AKS.**

The government must prove, not only that the companies with which Mr. Loftis did business operated in a way that violated the law, and that Mr. Loftis

20

knew what the law required, but also that Mr. Loftis entered into specific agreements with the companies knowing and intending that those agreements violated the law. As a result, emails and documents concerning the statements the companies made concerning their compliance with the AKS and Medicare regulations, as well as advice Mr. Loftis received from professionals such as attorneys and medical billers, is particularly relevant to showing the willful intent the government must prove to obtain convictions on all of the counts. Again, where such statements are admitted, not to show the companies' practices were actually compliant with the law, but only to show their effect on Mr. Loftis and his state of mind, they are not hearsay. And emails exchanged and kept in the ordinary course of business qualify for an exception to the hearsay rule.

For example, in April 2018, Prizm sent Mr. Loftis an email with multiple documents, including a letter by a lawyer. *See* Exhibit 1. In the letter, the lawyer referred to an "advisory opinion" that had been issued by the Office of Inspector General that distinguished between "raw/unqualified leads" and "qualified leads." The lawyer wrote that Prizm charged on a "cost per inquiry" for raw/unqualified leads and on an hourly or fixed fee basis for qualified leads, and the lawyer wrote that "compensation under this model" "does not appear to constitute payment for a referral in violation of the federal anti-kickback statute."

21

Similarly, in November 2019, another Prizm employee sent an email to Mr. Loftis discussing how Prizm did not violate the AKS.  The employee wrote, "The way we conduct our services is with 100% compliance," adding that Prizm did not cross the "very fine line between providing leads and providing referrals."  *See* Exhibit 4 (November 7, 2019 email with all attachments).  Prizm also sent Mr. Loftis a letter in which a lawyer wrote "we believe that the arrangement [the agreement] described meets the requirements of the Personal Services and Management Contracts safe-harbor as set forth in the AKS."  *See* Exhibit 4.

Statements by Individual 2 to Mr. Loftis, such as that he paid $50,000 to "a top Healthcare Law Firm" to ensure that his program was "legally compliant" are similarly relevant and admissible for the non-hearsay purpose of showing what Mr. Loftis believed about the legality of the arrangement he had with Individual 2. *See* Exhibit 3.

Likewise, exchanges between Mr. Loftis and an individual at the company Medtech in which that individual made false representations concerning Medtech's business model along with assurances that their practices were compliant with Medicare regulations and the AKS are admissible to show their effect on Mr. Loftis and his state of mind regarding the lawfulness of his agreement with Medtech.  Exchanges Mr. Loftis engaged in with attorneys he consulted regarding the AKS in general and Medtech's practices in particular, are likewise

both relevant to the elements of the charged offenses as well as Mr. Loftis's good faith defenses, and admissible as non-hearsay because they are offered not for the truth but to show their effect on Mr. Loftis and his state of mind.  In addition, because the emails were exchanged and kept in the regular course of business, they are admissible pursuant to the business records exception to the hearsay rule.

**D.      Mr. Loftis's knowledge and understanding of eligibility for the Provider Relief Fund**

Counts 3 and 4 involve alleged thefts of government money in the summer of 2020 and relate to funds that were sent to Mr. Loftis's company Back Pain Home Supplies as part of the Provider Relief Fund program.  The government must prove Mr. Loftis knew he was not entitled to the funds when he made the specific transactions charged in Counts 3 and 4, and Mr. Loftis's good faith belief that he was entitled to the funds is a defense to the charges.  Therefore, Mr. Loftis's exchange with an attorney considering whether his plan to use funds for continuous glucose monitoring devices for diabetes patients rendered him entitled to government funds under the program is relevant to both the elements of the charges and his good faith defenses, as is Mr. Loftis's knowledge of what the government's Provider Relief Fund website stated regarding eligibility.  *See* Exhibit 5 (April 17, 2020 email string between Mr. Loftis and an attorney).  Because none of these statements are being offered to show Mr. Loftis was actually entitled to funds from the Provider Relief Fund, but only to show that he believed he was,

23

they are not being offered for the truth but only to show their effect on Mr. Loftis and his state of mind.  As a result, they are not hearsay.  Mr. Loftis's statements in response to the attorney's comments are likewise not hearsay because they are not being offered for the truth of what he is saying but to show his state of mind and, potentially, as a prior consistent statement if the government attacks his credibility, which it surely will.

## VI.   Conclusion

Wherefore, the undersigned respectfully requests that the Court permit Mr. Loftis to testify as outlined herein and to introduce various prior statements, including emails and other documents, during trial because they are not hearsay or because they qualify for an exception to the hearsay rules.

/s/ Stephen Chahn Lee
Stephen Chahn Lee
Admitted *pro hac vice*
Law Office of Stephen Chahn Lee, LLC
209 S. LaSalle St, Suite 950
Chicago, IL 60604
312-436-1790
slee@stephenleelaw.com

Andrew C. Searle, Esq.
**SEARLE LAW P.A.**
200 East Robinson Street, Suite 1150
Orlando, Florida 32801
Telephone: 407-952-0642
Email: andrew@searle-law.com

Attorneys for Defendant

24