**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO: 6:25-CR-350-PGB-RMN |
| | ) | |
| MARK LOFTIS | ) | |

**DEFENDANT'S MOTION TO PRECLUDE**
**REFERENCES TO THE ANTI-KICKBACK STATUTE**

Given the dismissal of the only count in this case that references the Anti-Kickback Statute (Count Two), defendant Mark Loftis respectfully requests that the Court preclude all references to the Anti-Kickback Statute ("AKS") at trial. First, Count One does not allege violations of the AKS, and allowing the government to convict Mr. Loftis based on a crime the grand jury did not find would constructively amend the indictment in violation of his Fifth Amendment rights. Second, Eleventh Circuit precedent precludes the government from attempting to prove healthcare fraud through the submission of claims allegedly "tainted" by violations of the AKS. Third, evidence of AKS violations should be excluded under FRE 403 and 404(b).[1]

---

[1] Prior to filing this motion, Mr. Loftis's counsel informed the government that he would be filing such a motion. Counsel for the government said that they were opposed.

1

**A. Allowing the government to prove AKS violations as part of Count One would constructively amend the indictment.**

The only remaining count of the indictment, Count One, alleges a conspiracy to commit health care fraud (18 U.S.C. § 1347) and wire fraud (18 U.S.C. § 1343). Count One makes no reference to 42 U.S.C. § 1320a-7b, also known as the Anti-Kickback Statute, which is referenced solely in Count Two, which has now been dismissed with prejudice.

Count One does contain some references to "kickbacks" and "bribes," but those terms have long-standing legal meanings apart from the Anti-Kickback Statute. *See, e.g., United States v. Aunspaugh*, 792 F.3d 1302 (11th Cir. 2015) (discussing bribes and kickbacks in the context of honest-services fraud and reversing a conviction due to an erroneous jury instruction regarding the term "kickback"). Bribes and kickbacks relate to payments that improperly influence employees or agents[2] in ways that cause them to breach their fiduciary duty to their employer or client. *See, e.g., Skilling v. United States*, 561 U.S. 348, 401 (2010) (discussing bribes and kickbacks), *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098 ("The defining characteristic of a kickback is divided loyalties"). *See also* 41 U.S.C. § 52(2) (defining kickback as "any money, fee, commission, credit, gift, gratuity,

> **Commented [KA1]:** Unless there's some allegation mark bribed a public official, we should just refer to employees and contractors in the brief.

---

[2] Bribes and kickbacks may also be made to public officials, but there is no allegation payments to public officials were involved in this case.

2

thing of value, or compensation of any kind which is provided, directly or indirectly, to any [contractor] or the purpose of improperly obtaining or rewarding favorable treatment in connection with a [contract]"), 41 U.S.C. § 8701(2) (similar definition).   *Cf.* Florida Stat. 838.15 (defining commercial bribery in terms of attempts to influence a person to violate a duty that they are subject to as an agent, employee, lawyer, physician, or other role).

Along those lines, the Eleventh Circuit's pattern jury instructions refer to the terms kickbacks and bribes as follows:

> A bribe or a kickback is any money or compensation of any kind which is provided, directly or indirectly, to an employee for the purpose of improperly obtaining or rewarding favorable treatment from the employee in connection with [his] [her] employment.

O50.3 (Mail Fraud: Depriving Another of an Intangible Right of Honest Services 18 U.S.C. §§ [1341] and 1346 Private Employee). *See also* O50.4 (Mail Fraud: Depriving Another of an Intangible Right of Honest Services 18 U.S.C. §§ [1341] and 1346 Independent Contractor or Other Private Sector Contractual Relationship Besides Employer/Employee).

The Eleventh Circuit's pattern jury instructions also define the elements of bribery offenses such as 18 U.S.C. § 215(a)(1) to include the following terms relating to what constitutes a bribe:

- the Defendant [gave] [offered] [promised] something of value to the person named in the indictment;
- the Defendant did so knowingly and corruptly with the intent to [influence] [reward] an [officer] [director] [employee] [agent] [attorney] of a financial institution in connection with any [business] [transaction] of that institution; and

3

- the money or property [given] [offered] [promised] had a value greater than $1,000.

O6.1 (Bribery of a Bank Officer 18 U.S.C. § 215(a)(1)).

In charging Count One, the government specifically chose to limit the charge to certain conduct relating to "kickbacks" and "bribes," rather than to all conduct that might violate the Anti-Kickback Statute. As stated in the text of the AKS itself, the AKS prohibits certain conduct relating to "remuneration," which is a term "*including* any kickback, bribe, or rebate" (emphasis added). The Department of Health and Human Services itself has recognized that the AKS is "extremely broad" and is "so broad" that "concern has arisen among a number of health care providers that many relatively innocuous, or even beneficial, commercial arrangements are technically covered by the statute and are, therefore, subject to criminal prosecution." Medicare and State Health Care Programs: Fraud and Abuse; OIG Anti-Kickback Provisions, 56 Fed. Reg. 35952 (July 29, 1991). In particular, HHS recognized that payments to marketers might violate the AKS but do not involve the same concerns as payments to doctors who hold positions of public trust:

> [W]e believe that many marketing and advertising activities may involve technical violations of the statute. We, of course, recognize that many of these advertising and marketing activities do not warrant prosecution in part because (1) they are passive in nature, i.e., the activities do not involve direct contact with program beneficiaries, or (2) the individual or entity involved in

4

> these promotions is not involved in the delivery of health care. *Such individuals or entities are not in a position of public trust in the same manner as physicians or other health care professionals who recommend or order products and services for their patients.*

56 Fed. Reg. at 35974 (emphasis added).

HHS thus adopted a safe-harbor regulation that excepted payments for some marketing activities from the definition of "remuneration," just as it has adopted more than 25 other exceptions, as listed in 42 CFR § 1001.952 (e.g., investment interests, warranties, discounts).[3]

Accordingly, conduct involving "remuneration" may technically violate the AKS without relating to "kickbacks" and "bribes," and kickbacks and bribes are specific subsets of "remuneration" that are covered by the AKS rather than terms that encompass all conduct that may technically violate the AKS.

Given the dismissal of Count Two, the government should be allowed to admit evidence of "kickbacks" and "bribes" as per the Eleventh Circuit's definition of those terms but should be precluded from making *any* reference to the Anti-

> **Commented [KA2]:** CAN WE GIVE AN EXAMPLE OF REMUNERATION THAT IS NOT A KICKBACK OR BRIBE? WOULD BE HELPFUL IF WE HAD A CASE TO CITE ON THAT POINT.

---

[3]    Moreover, HHS itself has recognized that failure to comply perfectly with a safe-harbor exception to the AKS does not necessarily mean that the AKS has been violated, noting its expectation that "prosecutorial discretion would be exercised [by the government] not to pursue cases where the participants appear to have acted in a genuine good-faith attempt to comply with the terms of a safe harbor but for reasons beyond their control are not in compliance with the terms of that safe harbor." 56 Fed. Reg. at 35954.

5

Kickback Statute or seeking to admit irrelevant evidence that the purported bribes or kickbacks (or any other conduct) violated that statute.

Crucially, allowing the government to introduce evidence of payments that might violate the AKS but are not "kickbacks" or "bribes" would constructively amend Count One and raise constitutional concerns. The Fifth Amendment guarantees that a defendant can be convicted only of crimes charged in the indictment." *United States v. Holt*, 777 F.3d 1234, 1261 (11th Cir. 2015). An impermissible constructive amendment of the indictment can happen "when the evidence at trial or the court's jury instructions deviate from what is alleged in the indictment." *Id.* In determining whether a constructive amendment has occurred, the court should look at whether "the essential elements of the offense contained in the indictment [have been] altered to broaden the possible bases for conviction beyond what is contained in the indictment." *Id.* Constructive amendment of an indictment is per se reversible error. *Id.*

During the trial, should the government proceed on a theory that alleged AKS violations are part of the health care fraud conspiracy, there is a grave risk of an impermissible constructive amendment of the indictment. In the grand jury, the government clearly sought to delineate the health care fraud allegations from the alleged conduct that constituted the AKS violations. Rather than including health care fraud as an object of the conspiracy formerly charged as Count Two,

6

the government chose to charge it as a separate conspiracy.  The government must prove the conspiracy it charged in Count One; it cannot ask the jury to convict on a charge it has now dismissed.

### B. The government cannot prove Mr. Loftis committed healthcare fraud by submitting Medicare claims allegedly "tainted" by AKS violations.

Allowing the government to sweep all of the alleged Anti-Kickback Statute violations into the health care fraud conspiracy alleged in Count One would run directly counter to controlling Eleventh Circuit precedent.

In *United States v. Medina*, 485 F.3d 1291, 1298 (11th Cir. 2007), the Eleventh Circuit held that the payment of kickbacks in a manner that violates the Anti-Kickback Statute is not "sufficient to establish health care fraud without someone making a knowing false or fraudulent representation to Medicare."  In so concluding, the Eleventh Circuit rejected the government's claim that Medicare claims "tainted" by AKS violations constitute health care fraud under the theory that Medicare would not have paid the claims had it known about the AKS violations.  *Id.*  The Circuit reasoned that "[t]o be interpreted as health care fraud," "there must be some evidence present in the record that shows the patients were not legitimately prescribed the oxygen concentrators, or that [the companies] made false or fraudulent representations to Medicare on the patients' behalf."  *Id.*; *see also United States v. Verdeza*, 69 F.4th 780, 789 (11th Cir. 2023) ("A person makes a false claim if the treatments that were billed were not medically necessary [] or

7

were not delivered to the patients."). *Cf. United States v. Young*, 108 F.4th 1307, 1321 (11th Cir. 2024) (holding in restitution context government cannot show loss caused by claims purportedly tainted by AKS violations "without also establishing that the [prescriptions that the federal program] paid for were not medically necessary or were fraudulently obtained").

Accordingly, in *Medina*, the Eleventh Circuit upheld the conviction of a single defendant because she had submitted a certification to Medicare attesting her company would abide by all of Medicare's rules and regulations. *Medina,* 485 F.3d at 1298. The Circuit concluded that because that defendant had been engaged in paying kickbacks *before* signing the certification and continued to pay kickbacks *after* signing the certification, her attestation that she would abide by Medicare's rules was false because she had no intention of following the rules when she signed the document. *Id*. The certification, therefore, established the "false representation" to Medicare that is a required element of health care fraud. *Id*.

But the Eleventh Circuit reversed the convictions of two other defendants who, while they may have participated in the AKS violations underlying the claims, had not made similarly false statements to Medicare. *Id*. Moreover, for the defendant whose convictions were affirmed, the Circuit reversed all convictions of that defendant based on claims submitted *before* the false certification was made.

8

*Id.* (reversing convictions because "[n]o false representations had been made to Medicare when the claims in those counts were submitted.").

As a result, in this case, the government cannot prove Mr. Loftis conspired to commit healthcare fraud by showing he submitted claims to Medicare that were "tainted" by AKS violations. Any such violations lack any probative value concerning the sole remaining charge, while allegations that Mr. Loftis committed purportedly criminal conduct with which he is no longer charged is highly prejudicial and would risk confusing the jury. *See* Fed. R. Evid. 403.

Following the holding in *Medina*, for purported AKS violations to have any relevance at all, the government would have to prove first that Mr. Loftis made a false statement to Medicare, such as by submitting a certification stating he intended to abide by Medicare's regulations *after* he had already been making payments in violation of the AKS that he then *continued to make* after making the certification. However, the government has alleged the purported healthcare fraud scheme began *before* the alleged kickbacks were made. *Compare* Dkt. 1 at 8-9 (fraud conspiracy alleged to begin in September 2017) with 12 (AKS conspiracy alleged to begin in May 2018). Therefore, the government should not be permitted to introduce any evidence concerning alleged violations of the AKS statute without first making an offer of proof as to how those purported violations are probative of its healthcare fraud claim. If it is able to do so, any such evidence

9

should be limited to purported kickback violations that occurred *after* any allegedly false statement to Medicare was made.

> **Commented [KA3]:** I don't think we need to volunteer the recertification. Let the government make that argument if they want to.

### C. Evidence that Mr. Loftis purportedly violated the Anti-Kickback Statute should be excluded under Federal Rules of Evidence 403 and 404(b).

Permitting the government to introduce evidence of alleged AKS violations would necessitate a mini-trial over whether the conduct actually violated the AKS and should be precluded under FRE 403. Given the complexity of that statute's provisions, and the importance of proving Mr. Loftis's knowing and willful intent with respect both to the health care fraud count that is actually charged and the AKS violations that are not, such a mini-trial runs the risk of dominating the case with a collateral issue that is highly likely to confuse the jury concerning what crime Mr. Loftis is actually charged with committing and how they may consider the highly prejudicial evidence of uncharged allegedly criminal conduct, potentially even necessitating a mistrial.

Furthermore, even though the government has been aware since June 26, 2026, that it may seek to dismiss Count Two, it has still not filed a notice that it may seek to use evidence relating to the Anti-Kickback Statute under Rule 404(b) in support of Count One. Given that trial begins in three days and the government's eleventh-hour dismissal of 75 percent of the charges has already

> **Commented [KA4]:** There's no requirement they give us notice of iinextricably intertwined evidence.

10

thrown the proceedings into considerable disarray, the government should not be relieved of its obligation to provide adequate notice under FRE 404(b)(3).

Precluding the government from presenting highly prejudicial and time consuming evidence of dubious relevance to the sole remaining charge, will streamline the trial significantly and avoid difficult constitutional and evidentiary questions. Accordingly, all references to the Anti-Kickback Statute at trial should be precluded.

/s/Stephen Chahn Lee
Stephen Chahn Lee (admitted *pro hac vice*)
Law Office of Stephen Chahn Lee, LLC
209 S. LaSalle St, Suite 950
Chicago, IL 60604
312-436-1790
slee@stephenleelaw.com

Andrew C. Searle, Esq.
SEARLE LAW P.A.
200 East Robinson Street, Suite 1150
Orlando, Florida 32801
Telephone: 407-952-0642
Email: andrew@searle-law.com

Attorneys for Defendant

11