UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                                  CASE NO: 6:25-cr-350-PGB-RMN

MARK LOFTIS
                    Defendant.
_____/

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
TO PRECLUDE REFERENCE TO THE ANTI-KICKBACK STATUTE**

The United States of America, by and through undersigned counsel, hereby

opposes Defendant's Motion to Preclude Reference to the Anti-Kickback Statute

("AKS"). Doc. 84. Because Defendant's knowledge of the AKS, violations of it, and

attempts to conceal such conduct are direct evidence of his participation in a health

care fraud and wire fraud conspiracy—as expressly alleged in the Indictment in Count

One—Defendant's motion should be denied.

Indeed, under the controlling law of the Eleventh Circuit, *United States v.*

*Medina*, 485 F.3d 1291, 1298 (11th Cir. 2007), Defendant can be found guilty of health

care fraud if the Government shows that he knowingly made a false statement to

Medicare by certifying in a Form CMS-855 that he would abide by Medicare rules and

regulations—which include a promise not to pay kickbacks—while he was in fact

paying kickbacks both before and after making this false statement. The Government

will prove that is exactly what happened; Defendant falsely certified he would not pay

1

kickbacks even though he had been and continued to pay kickbacks for patient referrals and doctor's orders.

Defendant has known that the Government would use his knowledge and violation of the AKS in proving the health care and wire fraud conspiracy since this case was indicted. Defendant's arguments that a specific statutory reference to the AKS is not specifically referenced by name in Count One are unavailing; bribes and kickbacks, two of the primary forms of payments explicitly set out in the AKS that are designed to induce referrals, are mentioned at length in Count One, and throughout the original Indictment. Defendant had more than adequate notice. Further, even if his knowledge and violation of the AKS were not viewed as direct evidence of his fraud, such conduct is inextricably intertwined with the conduct charged in Count One, and thus there was no requirement to notice such evidence under Fed. R. Evid. 404(b).

Finally, because the AKS is specifically mentioned in over 30 proposed Government and defense exhibits—including contracts and certifications signed by Defendant himself—the fact that the AKS will be mentioned in this trial is inevitable. Defendant's Motion should be denied.

## BACKGROUND

Defendant is charged with conspiracy to commit health care fraud and wire fraud by submitting false and fraudulent claims through his company to federal health care programs for DME. One way the Government alleges that Defendant and others

carried out this scheme was by paying illegal kickbacks and bribes to co-conspirator marketers and telehealth companies to obtain doctors' orders for braces and to arrange for doctors and other medical professionals to have purported telehealth consultations and falsely sign brace orders without having any meaningful contact with patients. This conduct is specifically mentioned in the Indictment in the Purpose and Manner and Means section of Count One. Doc. 1, at ¶¶ 36; 37(b), (d) & (e).[1]

The Government will prove at trial that Defendant was paying illegal kickbacks and bribes to marketers. During the conspiracy, as he had before the conspiracy began, in May 2019, Defendant signed a certification in which he agreed to abide by all Medicare rules and regulations, including a promise not to pay illegal kickbacks and bribes in violation of the AKS, in which the statute is specifically referenced. *See* GX 108 at 47 ¶ 4 , 60, 64, and 67.[2]

---

[1] Indeed, the Indictment specifically mentions that one purpose of the conspiracy in Count One was "offering, paying, soliciting, and receiving illegal kickbacks and bribes in exchange for the referral of Medicare beneficiaries and doctors' orders for braces and other DME" and "offering, paying, soliciting, and receiving illegal kickbacks and bribes in exchange for medical providers signatures on doctors' orders for braces"; and that Defendant and others were "concealing and causing the concealing of kickbacks and bribes . . . ." Doc. 1 at ¶ 36(a)-(b) & (d).

[2] In this CMS Form-855S, Defendant agreed as the authorized representative of Back Pain Home Supplies that he would "abide by the Medicare Laws, Regulations, and Program Instructions, …… including, but not limited to, the Federal Anti-Kickback Statute, 42 U.S.C. section 1320a-7b(b)."

## ARGUMENT

### 1. The AKS Evidence Is Direct Evidence of Count One.

In *Medina*, the Eleventh Circuit held that paying kickbacks is not enough "to establish health care fraud without someone making a knowing false or fraudulent representation to Medicare." 485 F.3d at 1298. Health care fraud can be established if the Defendant makes a false statement to Medicare that they will not pay kickbacks when, in fact, they were paying kickbacks both before and after making this false certification. Defendant concedes this is the case in his motion. Doc. 84 at 8. This is exactly what Defendant did in this case, and the government's proofs will establish that Defendant paid kickbacks both before and after he made the certification. And this, on its own, warrants dismissal of his motion because Defendant's violations of the AKS by payment of kickbacks is direct evidence of his guilt as to Count One.

And beyond the CMS certification, at least thirty proposed exhibits mention the AKS.[3] For example, in Defendant's sham contracts with the marketers, that purported to be for marketing services paid by an hourly or flat fee and concealing the kickback payments paid per brace ordered, contain references to the parties complying with all laws including the AKS. *See, e.g.*, Gov. Exhibit 629A at 3 ¶ 6b. In another example, an email communication will demonstrate Defendant explained the AKS to a co-

---

[3] These exhibits include Government exhibits addressing the 855s: 106, 108, 109, 110, 112-116; contracts: 786 at 4, 577 at 3, 577C at 4, 625A at 4, 625B at 3, and 627A at 3; and communications with counsel: 576, 580, 582-84. The Defense exhibits include lawyer letters: DX153 and DX33; a PowerPoint: DX33; emails: DX87, 93, 109; and an article: DX73.

conspirator from whom he bought fraudulent orders and had the co-conspirator amend invoices to make it appear they were not violating the law. *See, e.g.*, Gov. Exhibit 721 ("I know what I am talking about . . . It is against the law to pay for a referral . . . charging me and collecting for these on a per lead basis will get us both into a lot of trouble . . . It is fine for us to have a gentlemen's agreement on what is expected . . . ."). Witnesses, including at least one lawyer, will testify that they advised Defendant or sent him information about the AKS. *See, e.g.*, Gov. Exhibit 580 ("We discussed the Federal Anti-Kickback Statute . . . which each apply the services you're involved in."). An email communication will establish that during the middle of the alleged conspiracy, Defendant claimed he was "well aware of Stark, AKS, and EKRA." Gov. Exhibit 575.

### 2. Even If it is Not Direct Evidence, the AKS Evidence is Inextricably Intertwined with the Charged Conduct and Defendant Had Sufficient Notice.

Although Defendant's knowledge of violation of the AKS is direct evidence of Count One, even if it were not, such evidence would be inextricably intertwined conduct related to the charged offense in Count One.

Evidence of prior bad acts is not extrinsic under Rule 404(b) if it: (1) arose out of the same transaction as the charged offense; (2) is necessary to complete the story of the crime; or (3) is inextricably linked with the charged offense. *United States v. Ellisor*, 522 F.3d 1255, 1269 (11th Cir. 2008). It is settled law that "[e]vidence, not part of the crime charged but pertaining to the chain of events explaining the context,

motive and set-up of the crime, is properly admitted if it is linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." *United States v. McClean*, 138 F.3d 1398, 1403 (11th Cir. 1998) (quoting *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985)); *see also United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) (holding that "evidence is inextricably intertwined with the evidence regarding the charged offense if it forms an 'integral and natural part of the witness's accounts of the circumstances surrounding the offenses to which the defendant was indicted.'" (quoting *United States v. Foster*, 889 F.2d 1049, 1053 (11th Cir. 1989)).

There is no doubt the AKS evidence the Government intends to introduce against Defendant would meet this standard even if it is deemed not to be direct evidence. Such conduct arose out of the same transactions as the charged crimes, is necessary to explain the background of the health care and wire fraud conspiracy, and is at least inextricably intertwined if not direct evidence of the health care fraud and wire fraud conspiracy charged in the Indictment.

### 3.  The AKS Evidence Is Not Unfairly Prejudicial.

Any AKS evidence the Government introduces at trial will not be unfairly prejudicial, and any prejudice would not substantially outweigh its probative value. It is direct evidence of a violation of Count One. As explained above, Defendant's promise on the CMS Form-855s not to pay kickbacks is a false statement to Medicare

that creates criminal liability for Count One on its own, as even Defendant admits. Further, such evidence will show his knowledge and intent. For example, the information and legal guidance he received on possible violations of the AKS that he chose to ignore shows his intent to violate the law. Any prejudice can be ameliorated with a jury instruction that the only charge in this Indictment is Count One. They are not being asked to deliver a verdict on uncharged crimes. The jury will not be confused, and Defendant will not be prejudiced.

### 4. The Indictment Is Not Constructively Amended if the Government Proves Violations of the AKS in the Context of Count One.

Defendant's chief argument in his motion appears to be that because the AKS is not specifically identified in Count One by referring to the statute itself, any proof of a violation of the AKS would constructively amend the current Indictment. But the Government alleged kickbacks and bribes were paid in several ways by Defendant and others in furtherance of the health care fraud and wire fraud conspiracy. Proof of such conduct is therefore direct evidence of the crime charged and inextricably intertwined evidence as explained above. Under *Medina*, Defendant's false certification to Medicare that he would not violate the AKS when he was, in fact, paying kickbacks creates criminal liability for Count One on its own

Defendant attempts to go around this roadblock to his motion to preclude AKS evidence by arguing that because the Indictment mentions only "kickbacks and bribes," and not "remuneration," it is somehow confusing, allows the Government to

7

talk about conduct that would not necessarily violate the AKS, or even constructively amends the Indictment by allowing the Government to prove conduct not charged in the Indictment. But the payment of money to a marketer or doctor to induce a patient referral or medical authorization is surely a kickback/bribe that violates the AKS, and the Government intends to proceed on these bases. The Government does not intend to mention "remuneration" or "cash in kind." The fact that other statutes also define kickbacks and bribes is immaterial. Just because other statutes outlaw kickbacks and bribes, and define them in a certain way, does not mean the AKS cannot be mentioned in this trial because it would be confusing, prejudicial, or a constructive amendment to the Indictment. It will not. Direct evidence of a crime as alleged, or evidence intrinsic to such allegations, cannot impermissibly broaden an Indictment, and the Court can properly instruct this jury on how AKS evidence may be used.[4]

---

[4] Indeed, in a case cited by Defendant, the Eleventh Circuit noted that:

> The Fifth Amendment guarantees that a defendant can be convicted only of crimes charged in the indictment. Thus, when the evidence at trial or the court's jury instructions deviate from what is alleged in the indictment, either a constructive amendment or a variance can arise. A constructive amendment occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment. The indictment can be expanded, either literally or in effect, by the prosecutor's actions or the district court's instructions. . . . However, we have held that evidence that properly was admitted as intrinsic to the charged offenses does not impermissibly broaden the indictment to include other crimes.

*United States v. Holt*, 777 F.3d 1234, 1261 (11th Cir. 2015) (internal citations and quotations omitted).

Defendant's arguments about other statutes outlawing bribes and kickbacks elide around the fact that the AKS outlaws kickbacks and bribes in the specific context of referrals and medical authorizations for health care benefits, items, and services, which is exactly what is alleged here. This case has nothing to do with honest services fraud, public officials, or even necessarily employees and agents. This is a case about the Defendant agreeing to submit false and fraudulent claims to Medicare because he knew that the claims were medically unnecessary and had been procured by the payment of kickbacks and bribes.   The AKS is the only statute that specifically addresses this kind of kickback or bribe. And it is the statute outlawing kickbacks and bribes that this Defendant was made aware of in Medicare certifications he signed, information he received, and the advice he was given.

## CONCLUSION

For the foregoing reasons, Defendant's motion should be denied.

Respectfully Submitted,

GREGORY W. KEHOE
United States Attorney

LORINDA LARYEA
Chief, Fraud Section
Criminal Division
U.S. Department of Justice

By:    */s/ Raymond Beckering III*
Raymond E. Beckering III
Trial Attorney
Florida Special Bar No. A5503174

9

Catherine Wagner
Acting Assistant Chief
Florida Special Bar No. A5502410
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Ave NW
Washington, DC 20005
Phone: (202) 262-8176
raymond.beckering.iii@usdoj.gov
Phone: (202) 794-0097
catherine.wagner@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2026, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system which will send a notice of electronic

filing to counsel for Defendant.

By:    */s/ Raymond Beckering III*
Raymond Beckering III
Trial Attorney

10