**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA**

**VS.** **CASE NO: 6:25-cr-350-PGB-RMN**

**MARK LOFTIS**

______________________/

**ORDER**

This cause is before the Court on the Defendant's Motion for New Trial. (Doc. 139). The Government submitted a Response in Opposition. (Doc. 142). Upon consideration, the Defendant's motion is denied.

## I. BACKGROUND

Defendant Loftis is charged in a four-count indictment with Conspiracy to Commit Health Care Fraud and Wire Fraud (Count One); Conspiracy to Defraud the United States and to Offer, Pay, Solicit, and Receive Kickbacks (Count Two); and Theft of Government Property (Counts Three and Four). (Doc. 1).

Count One alleges that Defendant Loftis and others submitted, or caused the submission of, approximately $29 million in false and fraudulent claims to Medicare, about $75,000 in false and fraudulent claims to TRICARE, and around $90,000 in false and fraudulent claims to CHAMPVA. (*Id.* at ¶ 37(g)). The Government alleges that Defendant Loftis paid bribes and kickbacks in exchange

for referrals and for medical providers' signatures on doctors' orders for braces and other DME. (*Id.* at ¶ 36). The fraud centers on medical providers who purportedly conducted telehealth consultations and signed orders for braces, but had no pre-existing relationship with the beneficiaries, did not examine them, and engaged only in telephonic conversations. The braces and other DME were not medically necessary. (*Id.* at ¶ 37(d–f)).

In Count Two, the Government avers that Defendant Loftis and others defrauded the Government of money and property by receiving bribes and kickbacks. (*Id.* at ¶¶ 38–42). Before trial, the Government dismissed Counts Two, Three, and Four. (Docs. 80, 82). The Defendant therefore proceeded to trial on Count One, which alleged a conspiracy spanning approximately September 2017 through October 2020. (Doc. 1).

The Government presented sixteen witnesses and more than 540 exhibits, including testimony from representatives of federal health care programs, coconspirators, investigating agents, and beneficiaries, as well as bank records, Medicare enrollment documents, emails, recordings, claims data, contracts, invoices, doctors' orders, and summary evidence. Defendant testified over three trial days and called one additional witness. On July 21, 2026, the jury found Defendant guilty of conspiring to commit health care fraud and wire fraud. (Doc. 131).

Defendant now seeks a new trial on six grounds. He argues that: (1) evidence and argument concerning the Anti-Kickback Statute should have been excluded after Count Two was dismissed; (2) the jury should have received a multiple-conspiracies instruction; (3) the jury should have received a statute-of-limitations instruction; (4) the jury should have received a venue instruction; (5) the weight of the evidence does not support the verdict; and (6) the cumulative effect of the asserted errors deprived him of a fair trial. The Government opposes each ground. The Court agrees with the Government and adopts and incorporates the arguments advanced in its Response (Doc. 142), as supplemented below.

## II. LEGAL STANDARDS

Fed. R. Crim. P. 33(a) states that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." *Id.* "'When considering a motion for a new trial, the district court may weigh the evidence and consider the credibility of the witnesses.'" *United States v. Brown*, 934 F.3d 1278, 1297 (11th Cir. 2019) (quoting *United States v. Albury*, 782 F.3d 1285, 1295 (11th Cir. 2015)). Where a defendant moves for a new trial based on improperly admitted evidence, the defendant must show that an objection was properly preserved, the court abused its discretion in admitting or rejecting the evidence, and the error was prejudicial to the defendant. *United States v. Stephens*, 365 F.3d 967, 974 (11th Cir. 2004). Motions for new trials based on trial errors must demonstrate that the error created circumstances that rendered the trial

prejudicially unfair. *See United States v. Martinez*, 763 F.2d 1297, 1315 (11th Cir. 1985) (rejecting the defendant's motion for a new trial based on a discovery violation because the violation did not render the trial "fundamentally unfair"). Accordingly, new trials should be granted "sparingly and with caution" and only in exceptional cases. *Id.* at 1313.

When a motion rests on an asserted error in the jury charge, the Court considers whether the requested instruction correctly stated the law, whether the charge given substantially covered the proposed instruction, and whether the failure to give the requested instruction seriously impaired the defendant's ability to present an effective defense. *United States v. Touray*, 151 F.4th 1317, 1331 (11th Cir. 2025). The charge is reviewed as a whole, and the Court has broad discretion in its formulation so long as it accurately states the law. *United States v. Crabtree*, 878 F.3d 1274, 1289 (11th Cir. 2018).

## III. DISCUSSION

### A. Evidence Concerning the Anti-Kickback Statute

Defendant first contends that, after the Government dismissed the separately charged Anti-Kickback Statute conspiracy, the Court should have barred evidence and argument concerning that statute. The Court disagrees. Count One alleged that Defendant and his coconspirators furthered the charged health care fraud and wire fraud conspiracy by paying illegal kickbacks and bribes for patient referrals, doctors' orders, and purported telehealth consultations. (Doc. 1

¶¶ 19, 36, 37). The challenged evidence, therefore, did not constructively amend or materially vary from the indictment; it proved a manner and means expressly alleged in Count One.

The evidence was also relevant to falsity and intent. Under *United States v. Medina*, a health care fraud conviction may rest on proof that a defendant knowingly submitted claims after falsely certifying that he would comply with Medicare rules, including the prohibition against kickbacks. 485 F.3d 1291, 1298 (11th Cir. 2007). Defendant signed Medicare enrollment certifications that referenced those obligations. The Government also introduced contracts, invoices, emails, and legal advice discussing the Anti-Kickback Statute, which tended to show Defendant's knowledge of what the law prohibited. Several communications showed that Defendant warned others that per-order or per-lead financial arrangements could violate the statute, yet the evidence showed he continued to use them. This evidence was probative of whether Defendant acted knowingly and willfully.

Nor was Defendant unfairly prejudiced. The indictment gave notice that kickbacks and bribes were part of the charged scheme, and the parties extensively litigated the Anti-Kickback Statute before trial. Defendant addressed the statute in the opening statement, through evidence, and in the closing argument. Most importantly, the jury was expressly instructed that Defendant was not charged with violating the Anti-Kickback Statute and could not be convicted solely on that

basis. (Doc. 130 at 28). The agreed instruction permitted the jury to consider an alleged violation only in conjunction with all other evidence in deciding whether the Government proved Count One. The Court presumes that the jury followed that limiting instruction. *See United States v. Hough*, 803 F.3d 1181, 1197–98 (11th Cir. 2015).

Accordingly, evidence and argument concerning the Anti-Kickback Statute were properly admitted, relevant to the offense charged, and appropriately limited. They do not warrant a new trial.

**B. Multiple-Conspiracy Instruction**

Defendant next argues that the jury should have been instructed on multiple conspiracies. The Eleventh Circuit's pattern multiple-conspiracies instruction is directed principally to cases in which an indictment charges several defendants with one overarching conspiracy, but the proof would permit a finding that some defendants joined only separate, unrelated conspiracies. *Touray*, 151 F.4th at 1331. The concern is that a peripheral defendant may be swept into a broader conspiracy through evidence admitted against codefendants. *United States v. Richardson*, 532 F.3d 1279, 1290–91 (11th Cir. 2008). That concern is substantially diminished in a single-defendant trial such as this one. *See United States v. Tomlinson*, 674 F.

App'x 892, 896 (11th Cir. 2017). The Court found a single conspiracy here and declined to charge the jury on multiple conspiracies.[1] (Doc. 120, pp. 5–31).

Finally, the instructions required the jury to find beyond a reasonable doubt that the conspiracy charged in Count One existed and that Defendant knowingly and voluntarily joined it. (Doc. 130 at 9, 14–15, 20). Defendant was free to—and did—argue his theory that the evidence showed separate arrangements rather than the single charged conspiracy. Because the charge correctly stated the law and adequately protected Defendant from conviction for an uncharged agreement, the requested multiple-conspiracies instruction was unnecessary.

### C. Statute of Limitations and Venue Instruction

The Defendant contends that any conspiracy involving Simms ended before November 11, 2019, the operative limitations date, and that the jury should have decided whether Defendant remained part of a conspiracy after that date. The record did not present a genuine dispute over when the post-November 11 conduct occurred. Rather, the disputed issue was whether that conduct was part of the charged conspiracy and whether Defendant acted with criminal intent. The Government introduced evidence that after November 11, 2019, Defendant

---

[1] The evidence also permitted the jury to find one conspiracy with a common objective: obtaining and billing federal health care programs for DME claims generated through purchased referrals and doctors' orders. Defendant, Lisa Webb, and Greg Simms occupied central roles, while marketers, telemedicine businesses, and others supplied referrals, patient information, and doctors' orders at different times. Changes in participants or methods did not require a finding of separate conspiracies where the evidence showed an overlapping operation directed toward the same objective.

continued billing claims arising from doctors' orders purchased from Prizm; continued paying Summit and Medtech; obtained doctors' orders through Henderson and Medtech; purchased CGM referrals; communicated with Webb and others about doctors' orders; and explored renewed business with Prizm in September 2020. Defendant did not dispute the dates reflected in the testimony and exhibits.

The case differs from *United States v. Edwards*, where conflicting testimony placed the charged transaction on either side of the limitations cutoff, making timeliness a factual question for the jury. 968 F.2d 1148, 1149–50, 1153 (11th Cir. 1992). Here, the Court instructed the jury that it could convict only if it found the charged conspiracy, identified the alleged period as September 2017 through October 2020, and explained the meaning of "on or about." (Doc. 130 at 9, 13–15, 20). On this record, no separate statute-of-limitations instruction was required.

Finally, as discussed above, the Court found that a single conspiracy existed. The defense then conceded that if a single conspiracy existed, venue was proper and that the offenses occurred within the statute of limitations. (Doc. 120 at 20:11 to 21:6; 21:17 to 22:7). *See United States v. Dileo*, 625 F. App'x 464, 469–70 (11th Cir. 2015) (venue instruction not required when the evidence does not create a factual dispute concerning where the pertinent acts occurred).

### D. Sufficiency of the Evidence

The Defendant contends that a new trial should be granted because the evidence was thin and rife with uncertainties and discrepancies. The Court rejected this argument at the Rule 29 hearing. This is not an exceptional case in which the evidence preponderates heavily against the verdict. The Government's proof of knowledge and willfulness went well beyond witnesses' characterizations of their own conduct. It included contracts and invoices the Government contended were structured to disguise payments for referrals and orders; Medicare certifications signed by Defendant; audits, denials, remittance information, complaints, and returns indicating that beneficiaries did not want or need the equipment; articles and communications warning that the conduct was unlawful; advice from counsel; and Defendant's own communications acknowledging that certain per-order or per-lead arrangements could violate the law. From that evidence, the jury could reasonably infer that Defendant understood the scheme and chose to continue it.

Defendant's challenges to the testimony of Charles Schwartz and other alleged coconspirators do not alter the result. A conviction may rest on uncorroborated accomplice testimony unless the testimony is incredible or insubstantial on its face. *United States v. LeQuire*, 943 F.2d 1554, 1562 (11th Cir. 1991). In any event, the Government identified documentary corroboration of Schwartz's testimony, including a consulting payment check and emails discussing a contemplated sale of doctors' orders. Other testimony that Defendant purchased

referrals and orders was likewise supported by bank records, invoices, and communications.

The record also permitted the jury to reject Defendant's assertion that he merely paid for legitimate advertising, call-center work, or software assessments. Witnesses testified that Defendant paid for qualified patient leads and completed doctors' orders, and documentary evidence showed payments linked to those products. The evidence further showed that Defendant specified the types and numbers of braces, diagnostic information, and other order details, and that he knew telemedicine companies paid prescribers with little meaningful contact with beneficiaries. The jury was entitled to credit this evidence and to disbelieve Defendant's contrary testimony.

Finally, the relative amount Defendant earned compared with other participants does not undermine the verdict. The Government presented evidence that Defendant personally received approximately $500,000 during the conspiracy, while his company billed Medicare approximately $30 million and received approximately $8 million. The issue was whether Defendant knowingly joined the charged conspiracy, not whether he received the largest share of its proceeds. The evidence amply supported the jury's finding.

**E. Cumulative Error**

The cumulative-error doctrine requires the Court to consider whether multiple errors, viewed together and in the context of the entire trial, deprived the

defendant of a fundamentally fair trial. *United States v. Margarita Garcia*, 906 F.3d 1255, 1280 (11th Cir. 2018) (quoting *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005)), *abrogated on other grounds by Davis v. Washington*, 547 U.S. 813, 821 (2006). But where a defendant establishes no individual error, there is nothing to aggregate. *See United States v. Jennings*, 280 F. App'x 836, 844 (11th Cir. 2008). For the reasons stated above and in the Government's Response, Defendant has shown no error. Accordingly, the cumulative-error doctrine affords no relief.

## IV. CONCLUSION

For these reasons, the Defendant's Motion for New Trial (Doc. 139) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on September 16, 2026.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties